| 6 | 317 |
| 110 | 618 |

## G. W. DENTON *v.* JAMES ERWIN et al.

The court will not give effect to an agreement entered into for an immoral and fraudulent purpose; but then such fraudulent and immoral purpose must be clearly made out, and not left to surmise or conjecture. This principle has been established in favor of public justice, and not for the interest of the party who seeks to profit by the acts of his adversary, of which he has been the participant.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Benjamin* and *Micou*, for plaintiff. *C. Roselius* and *R. Mott*, for defendant. The judgment of the court was pronounced by

EUSTIS, C. J. This is an appeal taken by *James Erwin* and *Andrew Erwin*, from a judgment of the Third District Court of New Orleans, rendered against them in favor of the plaintiff on the verdict of the jury. By the judgment a certain judgment in the name of *James Erwin* against the plaintiff, rendered in the late Parish Court of New Orleans, for $63,333 33 with interest, bearing date 6th June, 1842, was adjudged to be satisfied and execution thereof to be perpetually enjoined; the plaintiff also recovered from the defendant, *James Erwin*, the sum of $17,043 59, and also one undivided half interest in certain lots of ground situated in the Second Municipality and the adjoining parish of Jefferson.

It appears that for years previous to 1842, the plaintiff and *James Erwin* were on the most intimate and confidential terms, and were extensively engaged in speculations in real estate in New Orleans; that, in 1842, the whole real estate, which was the subject of their speculation, was in the name of *James*

*Erwin.* The fund from which the judgment was held to be satisfied, was composed of different sums, which *Erwin* received, belonging to the plaintiff in the course of their joint dealings; and the contest between these parties arises in the attempt of *James Erwin* to appropriate to himself the whole proceeds of the joint property from time to time sold by him, and the property remaining unsold. The judgment of the district court recognizes the joint interest of *Denton;* and this question, which is one purely of fact, is the point on which the case turns. The verdict of the jury being thus in favor of the plaintiff on the question of fact, as the case has been presented and argued before us, it only remains for us to consider whether on principles of law the judgment can be maintained. The details of fact have not been gone into by the counsel in this court, and we will proceed to consider the several questions of law which have been presented in argument.

*Andrew Erwin*, it appears to be conceded, was a mere nominal party, and we leave him entirely out of view in the consideration of the case. In the case of *Gridley* v. *Connor*, 2d Ann. 92, we had occasion to observe: "It must rarely happen that in the settlement of a partnership by the verdict of the jury, full justice is done to the parties. The relations of partners are too intimate, too confidental, to be determined otherwise than by a spirit of truth and justice among themselves. They are the agents of each other, in many circumstances completely in each others power, and *socium vero cavere qui possumus.*" The present controversy between these parties has been conducted with unusual bitterness; there are mutual accusations of purloining documents, and their former intimacy appears to have been succeeded by a spirit of injury and revenge. The trial in the court below was protracted to an unusual length. It occupied the court and jury for several weeks; the evidence was voluminous; and every point appears to have been most perseveringly contested by both parties. The property, the subject of their joint speculation, as we have seen, was in the name of *James Erwin*, and the plaintiff relied upon the existence of a certain counter-letter which he alleged he had received from *James Erwin*, and which established his joint interest. This counter-letter, it was charged, *Erwin* had obtained from the person to whom the plaintiff had intrusted it, and suppressed it. We do not think the existence of this counter-letter is proved; and if the case rested upon this fact of the existence of the counter-letter exclusively, we do not think the verdict of the jury could be sustained. But the defendant in his answer alleges, "that he, said petitioner and respondent, had some business transactions together previous to the 12th of May, 1842, but on that day a settlement was made of partnership affairs between them, and respondent was fully acquitted of all liability and responsibility in any way or manner of form to or for the said *G. W. Denton.*" If we consider this as an ordinary action between partners for the settlement of accounts, and the answer of the defendant as pleading a release, and separate this case entirely from the circumstances attending it, the question that this plea of release presents is not difficult to solve.

The instrument offered in evidence by the defendant as proving this settlement of the partnership and release from the plaintiff to the defendant, is to this effect: "Know all men by these presents, that *Gabriel W. Denton* of this city, having this day, in a final, full and complete settlement with *James Erwin* of this city, received payment in full from him of all debts, dues, demands of whatever kind I have or could hereafter have had growing out of our various business and different joint speculations in real or personal estate; now, therefore, in consideration of said settlement, and for the further sum of $50 to me paid, the

receipt of which I acknowledge, I hereby release, remise and quit claim unto the said *J. Erwin*, his heirs or assigns, all debts, dues or demands, actions or causes of action growing out of our various business transactions up to this date, either in writings, bills, bonds, notes or obligations of any kind whatever, either in law or in equity from the beginning of the world to this date. And I hereby furthermore transfer and convey to the said *Erwin* all my rights, title and claim, either in law or equity, to all lands, lots, houses or tenements not heretofore conveyed to him, or all rights, title or interest I could have either in law or equity, which said lands may have been bought on joint account, but where the titles were taken in the name of said *Erwin*, but held by him for the mutual benefit of *Erwin* and the said *Denton*, all of which said interest, title or claim, legal or equitable, it is now understood to be relinquished by me and vested in full in said *Erwin*, he having this day paid me in this settlement for same; and I hereby convey away and relinquish to said *Erwin* all my title, interest and claim, positive or contingent, to all batture rights acquired by purchases originally made on joint account from *John R. Pully* of this city, or on all claims against said *Pully*, or on the batture rights acquired by purchase from *M. Morgan, J. Collins, H. Howard* and the heirs and representatives of *S. B. Slocomb*, all of which has been included in this settlement, and which in fact is intended as a full relinquishment to said *Erwin* of all interest to property ever held in his name, or on joint account; and as an acknowledgment that I have this day, on a final settlement with him of all our affairs, received satisfaction in full of all demands of every description whatever. In witness whereof I have hereunto set my hand and seal this twelfth day of May eighteen hundred and forty-two. G. W. DENTON."

It appears that by an act passed before *Cenas*, notary public, and bearing date 12th May, 1842, the same date as that of the instrument above recited, the plaintiff conveyed to *James Erwin* a large amount of real estate, which is the subject of the present suit, in which *Erwin* was previously jointly interested. The consideration stated in the act was $63,800 acknowledged to have been received in cash, and three notes of $12,688 33 each, payable at six, nine and twelve months date. The document signed by *Denton* is under private signature, and was recorded in the office of a notary public on the 30th of June, 1842. The defendant, by relying on it in his defence and producing it in evidence, has produced written evidence of the existence of a partnership between himself and *Denton*, for the objects of which that document treats. True, it is not in his handwriting; but by seeking to avail himself of it and producing it, he makes it his own. If, therefore, this document should not be conclusive evidence of the settlement of the partnership and the release of *Erwin*, and of the transfer to him of *Denton's* interest in the concern, it is good evidence of the existence of the partnership and of the interest of *Denton* in the real estate which was the subject of the partnership. The inquiry then is as to the validity and verity of the instrument as a discharge on the part of *Denton* in favor of *Erwin*, which was to put an end to the partnership concern and to transfer the interest of the former to the latter. It is to be observed that this document is alone, and without any accompanying evidence, written or verbal, which corrobates or explains it. It is not mutual; purporting to emanate from *Denton* alone, and *Erwin* not binding himself to any part or portion of it. So far from this instrument closing the partnership relations between these parties, the evidence furnishes conclusive proof of the reverse. It is not satisfactorily proved that the notes given by *Erwin* to *Denton*, under the act of the 12th of May, 1842, were paid; and the

DENTON
v.
ERWIN.

collection of the rents of the property after the date of that act by *Denton*, standing as it does entirely unexplained, is a fact in direct conflict with the validity and verity of the instrument signed by *Denton* as a termination of their partnership concerns.

The whole tenor of the evidence is to the same effect, and we are satisfied that the partnership was not terminated in 1842, but continued on the same footing as before. The evidence by which the interest of *Denton* is established, we consider strictly legal and in every respect sufficient; inasmuch as the writing of *Denton*, produced by *Erwin* for the purpose of appropriating the partnership property to himself, is to all intents and purposes of the same force and effect, as to the existence of the partnership, as though written by himself. We have already stated the extreme difficulty of ascertaining the truth in relation to partnership matters, of which the partners themselves are the sole depositaries of the secret, and where the investigation is obstructed by the interests and the temper of the litigants. From an examination of the testimony, weighing that of those who know most about the concerns of the parties, we find no sufficient ground for disturbing the verdict on any question of fact at issue between the parties. The appeal of the counsel for the defendants to this court, that the action of the plaintiff cannot be maintained as originating *ex turpi causâ*, we do not feel ourselves at liberty to act upon. There was no plea to that effect in the court below, or exception filed in this court. As we held in the case of *Denton* v. *Wilcox*, 2d Ann. 66, we will not give effect to an agreement entered into for an immoral and fraudulent purpose; but then such fraudulent and immoral purpose must be clearly made out, and not left to surmise or conjecture. When such a case is brought before a court of justice, the court is bound, from a sense of self respect, to withhold its sanction and dismiss the parties; but this is in the interest of public justice, and not in the interest of the party who seeks to profit by the acts of his adversary, of which he has been the participant. On this point there is no sufficient evidence requiring any action on the part of the court. This view which we have taken of the merits of this case has rendered unnecessary any notice in detail of the exceptions taken to the ruling of the judge on the trial in the court below, to which bills of exception were taken by the counsel of both parties. Neither party has asked that the cause should be remanded; and the counsel for the defendant himself has requested that it should be closed in this court.

There is a part of the verdict, not dependent upon the merits, which cannot be sustained. The petition charges, that the judgment was paid and satisfied by compensation, by reason of monies received at various times by *Erwin* from the sales of the partnership property and the rents thereof; and an account was filed by the plaintiff, which we understand the jury to a certain extent as affirming. The verdict holds the judgment to be satisfied at the date of its rendition. We consider that the judgment must be considered as satisfied by the receipts of money at different times, as set out in the account of the receipt of the different sums by *Erwin*, and that in this respect the judgment ought to be changed, and in other respects affirmed.

It is therefore ordered, adjudged and decreed, that the money judgment rendered for the plaintiff by the court below be reduced from the sum of $17,043 59 to the sum of $3272 64, which sum the plaintiff do recover from the defendant, *James Erwin*, and that in all other respects the judgment of the court below be affirmed; the costs of the appeal to be paid by the appellee.