(34 South. 707.)

No. 14,440.

JOHN T. HARDIE'S SONS & CO. v. SCHEEN et al.*

(March 16, 1903.)

SPECIFIC PERFORMANCE—CONTRACT AGAINST PUBLIC POLICY—ACTION ON NOTE—DEFENSES.

1. Courts will not lend their aid for the enforcement of contracts against good morals or against public policy; and a contract by which one creditor of an embarrassed debtor, in order to lure the other creditors to settle their claims at a reduced figure, outwardly agrees to the same reduction, while secretly exacting full payment, is of that character; and notes in pursuance of it cannot be enforced, though given after the other creditors had been settled with on the reduced basis.

2. The maker of the notes may plead the illegality of the agreement in pursuance of which they were given.

(Syllabus by the Court.)

Certiorari to Court of Appeal, First Circuit.

Action by John T. Hardie's Sons & Co. against Louis E. Scheen and others. Judgment for plaintiffs was affirmed by the Court of Appeal, and defendants bring certiorari. Judgment of Court of Appeal set aside, and suit dismissed.

John Dalls Wilkinson, Wilkinson & Carter, and Egan, Scheen & Stephens, for applicants. John I. Teer and Thomas Marshall Miller, for respondents.

PROVOSTY, J. In April, 1898, Louis E. Scheen, who was carrying on a commercial

*Rehearing denied June 25, 1903.

business at Coushatta, La., failed. A number of suits were filed against him by his creditors. Some were attachment suits. Others were revocatory actions directed against sales and mortgages alleged to have been in fraud of creditors. Among these creditors were the plaintiffs in the present suit, John T. Hardie's Sons & Co., commission merchants in the city of New Orleans. They put in the hands of local attorneys for suit two claims, one for $3,416.67, and one for $8,-497.62, both standing on open account. Before suit could be filed on these claims, an understanding was come to between the attorneys of Hardie's Sons & Co. and of the debtor, Scheen, by which the former were to be paid in full their claim, one-third at once, and the remainder by means of two notes of equal amount, falling due in one and two years, respectively, and security was to be given for the deferred payments. Later, however, the attorneys of Scheen concluded that it would be better that Hardie's Sons & Co. should institute attachment and revocatory suits similar to those which had been filed by the other creditors, in order that their claims might share in the fruits of the revocatory actions in case these actions proved successful. At the time Hardie's Sons & Co. filed these suits, which were approximately for $12,000, they had on hand for the debtor, L. E. Scheen, a large quantity of cotton, which, when sold, would go towards payment of the debt for which suit was filed. There is some evidence that the filing of the suits had the further purpose in view of creating the impression that Scheen's indebtedness was larger than it in realty was; thereby to induce the other creditors to grant more favorable terms in a compromise, or settlement at a reduced figure, which was to be proposed to them. But the testimony does not show positively that the attorneys of Hardie's Sons were parties to this further or ulterior purpose. Pending the suits the attorneys of Scheen made a list or schedule of the creditors of Scheen, and of the amounts due them, and prepared, also, a written instrument of compromise, by which the creditors were made to agree to accept 33⅓ cents on the dollar in full of their claims. At the head of this list they put Hardie's Sons & Co. They put them down for the amount claimed in the suits,

although the cotton had in the meantime been sold, and the debt reduced to $3,385.32. Hardie's Sons & Co. signed the instrument of compromise for this inflated claim of $12,000, and thereafter Scheen settled with his creditors on a reduced basis, some creditors signing the compromise, and others settling without signing, and still others exacting 50 per cent.; but all of them knowing of the compromise, and the majority, if not all, being influenced by the fact that Hardie's Sons & Co., who appeared on the schedule for more than one-half of the entire indebtedness, had signed. The instrument of compromise was thus signed by Hardie's Sons & Co. in October or November, 1898. In the spring following, Scheen made the cash payment to Hardie's Sons & Co. according to agreement, and delivered to them as collateral security a policy of insurance on the life of one Teer. Later, in July, 1899, he executed his two notes for the deferred payments, each for $1,128.44. At the maturity of the first of these notes, Hardie's Sons & Co. instituted the present suit.

Originally the only demand of the suit was for $1,128.44 and interest, alleged to be due on one of the notes, and for $102.20, alleged to be due for a premium paid on the pledged life insurance policy. To this demand the defendant answered by a general denial, and by an allegation that the policy of insurance had been delivered to the plaintiffs in full payment of the notes. This answer was filed in April, 1900. In October following, the plaintiffs filed a supplemental petition, instituting a revocatory action aimed at the same mortgage which had been attacked in the suits of April, 1898, and also against a conveyance which L. E. Scheen had made of the mortgaged property after he had compromised with all his creditors. To this revocatory action the defendants therein, Lisso & Bros. and Mrs. M. A. Scheen, answered, alleging the good faith of the assailed transactions, and alleging further that the plaintiffs were estopped from contesting same, because part of the money derived from same had gone to them in the cash payment made to them by their debtor, L. E. Scheen; also that the plaintiffs had not been injured by these transactions, their debt being secured by the life insurance policy. Before the case came to trial, all the defendants

joined in filing a peremptory exception based on the fact of Hardie's Sons & Co. having signed the instrument of compromise, agreeing to accept 33⅓ cents on the dollar in full of their claim.

The district court sustained this peremptory exception, and dismissed the suit. The Court of Appeal reversed the judgment and remanded the case for further trial, and thereupon the present application for a writ of review of the judgment of the Court of Appeal followed.

That part of the suit involving the revocatory action has not yet been tried, nor the main demand on the merits. The only matter to be reviewed, therefore, is the point made by the peremptory exception.

The law on this subject is stated in Story on Eq. Juris. p. 370, par. 378, as follows:

"There are other cases of constructive frauds against creditors which the wholesome moral justice of the law has equally discredited and denounced. We refer to that not unfrequent class of cases in which, upon the failure or insolvency of their debtors, some creditors have by secret compositions obtained undue advantages, and thus dissuaded other innocent and unsuspicious creditors into signing deeds of composition which they supposed to be founded upon the basis of entire equality and reciprocity among all the creditors, when in fact there was a designed or actual imposition upon all but the favored few. The purport of the composition or trust deed, in case of insolvency, usually is that the property of the debtor shall be assigned to trustees, and shall be collected and distributed by them among the creditors according to the order and terms prescribed in the deed itself. And in consideration of the assignment, the creditors, who become parties, generally agree to release all their debts, beyond what the funds will satisfy. Now, it is obvious that in all transactions of this sort the utmost good faith is required, and the very circumstance that other creditors of known reputation and standing have already become parties to the deed will operate as a strong inducement to others to act in the same way. But if the signatures of such prior creditors have been procured by secret arrangements with them, more favorably to them than the general terms of the composition deed warranted, those cred-

itors really act, as has been said by a very significant though homely figure, as decoy ducks upon the rest. They hold out false colors to draw in others to their loss or ruin.

"In modern times the doctrine has been acted upon in courts of law, as it has long been in courts of equity, that such secret arrangements are utterly void, and ought not to be enforced, even against the assenting debtor, or his sureties, or his friends. There is great wisdom and deep policy in the doctrine; and it is founded in the best of all protective policy—that which acts by way of prevention rather than by mere remedial justice—for it has a strong tendency to suppress all frauds upon the general creditors, by making the cunning contrivers the victims of their own illicit and clandestine agreements. The relief is granted, not for the sake of the debtor, for no deceit or oppression may have been practiced upon him, but for the sake of the honest and humane, unsuspecting creditor. And hence the relief is granted equally whether the debtor has been induced to agree to the secret bargain by the threats or oppression of the favored creditors, or whether he has been a mere volunteer, offering his services, and aiding in the intended deception. Such secret bargains are not only deemed incapable of being enforced or confirmed, but even money paid under them is recoverable back, as it has been obtained against the clear principles of public policy. And it is wholly immaterial whether such secret bargains give to the favored creditors a large sum, or an additional security or advantage, or only misrepresent some important fact, for the effect upon other creditors is precisely the same in each of those cases. They are misled into an act to which they might otherwise not have assented."

This statement of the law is in full accord with our jurisprudence. Slidell v. Pritchard, 5 Rob. 111; Antoine v. Smith, 40 La. Ann. 560, 4 South. 321; Fox v. McDonough's Succession, 18 La. Ann. 421. See, also, Chitty on Contracts, vol. 1, p. 370; also Am. & Eng. Enc. (2d Ed.) vol. 6, p. 394.

Hardie's Sons & Co. entered with the debtor Scheen into just such a scheme as is here described. They outwardly agreed to accept 33⅓ cents on the dollar, while secretly exacting payment in full, and this they did in or-

der to lure the other creditors of Scheen into making a settlement at a reduced figure; and some, if not all, of the other creditors were thereby led into making a settlement on a reduced basis. The exception was therefore properly sustained by the district judge, and erroneously overruled by the Court of Appeal.

It is argued in behalf of plaintiffs that the agreement evidenced by the instrument of compromise was conditional upon all the creditors signing, and that all the creditors did not sign, and that therefore the agreement never came into existence, and plaintiffs are not bound by it. This is true, but what of it? No one is pretending to say that the agreement evidenced by the instrument of compromise is binding upon Hardie's Sons & Co. as an agreement. How could it be, when the distinct understanding was that, in so far as they were concerned, it was to be nothing more than a mere sham— a mere device to hoodwink the other creditors. Even if all the other creditors had signed, there would not have been any agreement, so far as Hardie's Sons & Co. were concerned. No one pretends to say that they agreed to abate one jot of their debt, but what is said and what is proved is that they joined Scheen in a scheme to deceive the other creditors, and that the note sued on was given in pursuance of this scheme, and that, such being the case, the courts will refuse their aid to enforce payment of it. They are caught in the trap they set for the other creditors, and for their punishment and as a warning to others the courts leave them in the predicament in which they have placed themselves.

It is also argued that, granting that the effect of signing the instrument of compromise was to preclude plaintiffs from recovering the deferred portion of the debt, yet that there remained on the part of the defendant a natural obligation to pay such deferred portion, and that this natural obligation could form a valid consideration for a new debt, and that the notes which were given nearly a year after the signing of the instrument of compromise, and long after the other creditors had been settled with, must be considered as a new debt, based on this natural obligation. Suffice to say that under the facts of the case the note was executed strictly in pursuance and fulfillment of the agreement by which the debt was to be paid in full, and not by virtue of any new agreement.

It is also said that to permit the defendant, or his ayant causes, to set up this defense, would be to permit a party to allege his own turpitude. This argument admits the tainted nature of the agreement, but insists that the courts must enforce it nevertheless. The argument refutes itself. The quotation from Story, above, is a further answer to it, and, if further refutation were needed, such could be abundantly found in the books. Am. & Eng. Ency. of L. (2d Ed.) vol. 6, p. 394 et seq.; Weaver v. Waterton, 18 La. Ann. 241; and a host of other decisions. It is not as a protection to the debtor, but as a protection to society, that the defense is permitted to be made. Gil v. Williams, 12 La. Ann. 219; Association v. Berghaus, 13 La. Ann. 209; Mullholand v. Voorhies, 3 Mart. (N. S.) 46; Gravier v. Carraby, 17 La. 132; Wilcox v. His Creditors, 2 Rob. 27; Davis v. Holbrook, 1 La. Ann. 176; State v. Lazarre, 12 La. Ann. 166; Slidell v. Pritchard, 5 Rob. 106; Delahoussaye's Heirs v. Davis' Widow and Heirs, 19 La. 409; Insurance Co. v. Addison, 9 Rob. 486, 491; Denton v. Wilcox, 2 La. Ann. 60, 66; Same v. Erwin, 6 La. Ann. 317, 320. The court will permit the illegality to be pleaded even in the Supreme Court, or, what is more, will notice it without plea. Gravier's Executor v. Carraby's Executor, 17 La. 142.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal be set aside, and that the peremptory exception be sustained, and the plaintiffs' suit be dismissed, with costs.