## TEXAS CO. v. COUVILLON et al.*
### No. 14841.

Court of Appeal of Louisiana. Orleans.
April 29, 1935.

Sanders, Baldwin, Haspel & Molony and Robert Weinstein, all of New Orleans, for appellant.

Weiss, Yarrut & Stich and Gerald Netter, all of New Orleans, for appellee.

LECHE, Judge.

From a judgment originally dismissing this case as of nonsuit, an appeal was taken to this court and our opinion will be found in 148 So. at pages 295, 296. At that time the case was ordered remanded to the First City Court for further proceedings consistent with the views expressed, and particularly with reference to ascertaining the market price of certain products as of a certain date and for the further purpose of ascertaining subsequent payments made on an account relative to the question of imputation. The facts of the case were fully set forth in our previous opinion, supra, and it would serve no useful purpose to repeat them in extenso here. The remanding of this case resulted in a judgment in favor of plaintiff, and it is from this judgment that defendant has appealed.

On October 15, 1930, plaintiff entered into a contract with Adras A. Couvillon, appointing him as its agent in charge of one of its service stations in this city, and delivered to him 1,000 gallons of gasoline and 30 gallons of motor oil on consignment. Approximately one month later the defendant Thomas signed and executed the following document:

"New Orleans, La., Nov. 17, 1930. ·
"The Texas Company, New Orleans, La.

"Gentlemen: I hereby guarantee the payment of the one thousand (1000) gallons of gasoline and thirty gallons (30) of lubricating oil, which you delivered as the initial consignment to Mr. A. A. Couvillon, at the Diamond T. Service Station, Broad & Poydras Sts., N. O., La.

"It will be further understood that the above amount of merchandise, is all that I am to be responsible for, and only until such time as Mr. Couvillon's name is placed on your credit list.

"Very truly yours,
"[Signed]    George M. Thomas."

The defendant Couvillon was never cited, and the purpose of this suit is to recover from Thomas under the above-quoted document, the price of the 1,000 gallons of gasoline, and the 30 gallons of lubricating oil. We decided in our previous opinion that, if Thomas was liable for the price of those products, the basis of liability should be the market price obtaining on the date of his guaranty, November 17, 1930, and to determine the market price at that time was one of our reasons for remanding the case.

It is the contention of defendant now that no liability exists on his part, as there was a total lack of consideration for the guaranty, and he cites as authority the case of Watkins Company v. Jones et al., 171 La. 467, 131 So. 301, 302. In that case the circumstances appear to be similar. There plaintiff sued defendants as sureties on a contract by which it was to sell to one Magee such goods and merchandise as the latter might require and in which it was set forth that the said Magee was then indebted to the plaintiff in

the sum of $2,796.24. The defendants were to pay for such goods as Magee purchased and did not pay for, and also Magee's indebtedness at the time. Magee paid for all purchases made and a certain sum on account of the past indebtedness, and suit was brought against defendants for the balance of the past indebtedness. Justice St. Paul, as the organ of the court, said:

"The defense is that there was no consideration for the assumption of this past indebtedness. And the trial court thought the defense well founded.

"Now the consideration for becoming surety for the past indebtedness was the extension of time thereon; but the past indebtedness was to become due at any time the agreement between plaintiff and Magee should be terminated, and that agreement provided that it might be terminated at any time by either party on giving notice to the other. Hence there was no obligation on the part of plaintiff to extend payment of the past indebtedness, since it could terminate the agreement at will and demand payment at once. In other words, on the very day the agreement was signed, the plaintiff might have terminated it and demanded payment of the past indebtedness; so that no extension thereof whatsoever was granted."

See, also, W. T. Rawleigh Co. v. Toms et al. (La. App.) 153 So. 595.

In this case the guaranty was to continue only "until such time as Mr. Couvillon's name is placed on your credit list." On that point we said in our previous opinion, supra: "* * * Our understanding of this language is that Thomas agreed to guarantee the payment of the purchase price of the initial sale of gasoline and oil only until such time as the plaintiff had an opportunity to determine whether Couvillon was a good credit risk. We do not believe that the language can be fairly interpreted to mean that Thomas was guaranteeing these items for an indefinite period of time, or so long as the plaintiff might see fit to defer action upon the credit responsibility of Couvillon. Under this clause plaintiff was obligated to determine within a reasonable time whether or not it would accept or decline Couvillon as a credit customer. If he was granted credit, Thomas' guaranty was at an end, but, if Couvillon was rejected and failed to pay for the merchandise, Thomas became liable under his guaranty."

█ Many months elapsed, and Couvillon was never placed on plaintiff's credit list, and, as far as the record shows, no effort was made by plaintiff to determine whether or not Couvillon was a good credit risk. Our view of the document is that it did not contemplate an indefinite postponement of an examination of Couvillon's credit and the placing or rejecting of his name from plaintiff's credit list. We stated in our previous opinion: "It must be borne in mind, too, that the surety is entitled to a strict construction of his contract. He is protected from any interpretation of his contract not resting on clear expression or plain implication. The Code declares that suretyship is not to be presumed, should be expressed, and is to be restricted within the limits intended."

It will be noted that whether or not Couvillon was placed on plaintiff's credit list was wholly within the control of plaintiff. After obtaining the guaranty from Thomas, it had only to do nothing to make the guaranty effective. Plaintiff contends that Thomas was interested in the property, and the consideration consisted in establishing Couvillon as a tenant in the premises. This contention is met by the fact that Couvillon was established in the premises and had signed his contract with plaintiff a month before the guaranty was given by Thomas. The consideration could not have been the extension of credit to Couvillon because the future deliveries of oil and gasoline were on a C. O. D. basis. Plaintiff further contends that the failure to place Couvillon on its credit list is the very condition under the terms of the guaranty which makes it effective. This might be the case if there was a cause or consideration for the agreement and if plaintiff has done what was contemplated by the contract; namely, to make a timely investigation of Couvillon's credit and either accept or reject him from their credit list.

█ For the reasons assigned, we are of the opinion that there was a want of consideration, and that, even had such consideration existed, the action of plaintiff in failing to timely investigate Couvillon's credit and either place him on their credit list or reject him bars a recovery.

The judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of defendant George M. Thomas and against the plaintiff, the Texas Company, rejecting plaintiff's suit at its cost.

Reversed.