## CONSOLIDATED COMPANIES, Inc., v. ANGELLOZ et al. *

### No. 1640.

Court of Appeal of Louisiana. First Circuit.

Nov. 7, 1936.

For prior opinion, see 166 So. 910.

Dupont & Dupont, of Plaquemine, for appellants.

Borron, Owen & Borron, of Plaquemine, for appellee.

*Writ of error refused Jan. 4, 1937.

DORE, Judge.

The facts and issues involved in this case are fully given in our original opinion. See 166 So. 910.

Three principal contentions are made by counsel for plaintiff in the attack made on the correctness of the original opinion. These three contentions will be taken up in order:

(1) It is strenuously contended that we were in error in holding that parol testimony was admissible to show: (a) That the guaranty was without consideration, or that the consideration was other than that alleged in the petition, and to show whether or not the consideration was legal and sufficient under the circumstances of the case; and (b) to show the facts and circumstances under which defendants signed the letter of guaranty in order to determine whether or not it was necessary for plaintiff to notify defendants that it had received, accepted, and acted on said letter of guaranty.

(a) It is a general rule that, as between parties to an instrument such as a guaranty, the want of consideration, the failure of consideration, or the illegality of the consideration may be shown by parol evidence, without alleging mistake, error, or fraud. Texas Co. v. Couvillon et al. (La.App.) 160 So. 839; Watkins Co. v. Jones, 171 La. 467, 131 So. 301. Moreover, the petition in this case alleged certain considerations for the guaranty, and the defendants denied the alleged considerations and set up other and different consideration for the guaranty. On the issue thus raised by the pleadings, parol evidence was clearly admissible to determine this issue.

(b) It is alleged by plaintiff in its supplemental petition that the letter of guaranty sued on was signed by the defendants at the instance and request of the plaintiff and was accepted and acted on by it. This allegation of fact was denied by the defendants. Under the issue thus made on the pleadings, parol evidence was certainly admissible to show whether the allegations made by plaintiff were true or whether those made by defendants on the manner in which the letter was obtained were true. The decided preponderance of the evidence shows that the letter of guaranty was drawn at the suggestion of plaintiff's president and was given to the principal debtor, A. A. Angelloz, who secured the signature of the three defendants and who returned the letter to the plaintiff. So far as these defendants are concerned, there was no contact or communication whatever between them and plaintiff, but, on the contrary, defendants signed the letter of guaranty at the instance and request of the principal debtor and not at the instance and request of the plaintiff.

In the cases cited in the original opinion, and relied on by plaintiff, to the effect that, where the guaranty is given at the request of the guarantee and is acted on by him, notice of acceptance to the guarantor is unnecessary, the facts in those cases show that the guarantor either delivered the guaranty to the guarantee or the facts were such as to show that the guarantor waived notice of acceptance.

We therefore adhere to our ruling that parol testimony was admissible in the case under the pleadings.

(2) Another complaint urged against the original opinion is that we injected into the case an issue not raised by the pleadings nor passed on by the trial court, and, ex proprio motu, decided the case on a foreign issue.

The facts from which we determined the nature of the letter of guaranty and the purpose and consideration for which it was given were properly in evidence under the pleadings and issues in the case. We found from those facts that, if plaintiff was permitted to recover on this guaranty agreement, the court would be giving its sanction and approval to the enforcement of a contract having as its purpose and effect the giving of a secret preference to one creditor over the others in a proposed composition settlement based on equality, thereby lending our aid to the enforcement of a contract reprobated by law. Courts will notice, ex officio, the illegality of contracts reprobated by law, where the evidence properly in the record shows such contracts to be against public policy and good morals, and in such case declare the nullity of such contracts at any stage of the proceedings; and, if necessary, supply the plea of nullity. Schmidt v. Barker, 17 La.Ann. 261, 87 Am. Dec. 527; Gravier's Curator v. Carraby's Executor, 17 La. 132; John T. Hardie's Sons & Co. v. Scheen et al., 110 La. 612, 34 So. 707.

Under the relevant facts in this case, we found that the contract of guaranty

sought to be enforced had as its purpose and effect the giving of a secret preference to the plaintiff, and therefore it was our duty, as a court of justice, to refuse to give our sanction to the enforcement of such a reprobated contract. A reconsideration of the matter reassures us of the correctness of our decision on this point.

 (3) It is also contended on the rehearing that the facts do not justify the conclusion reached in the original opinion that the president of plaintiff company did not divulge to the other creditors the fact that his company had secured this guaranty of its account against the principal debtor from those three defendants. The president admits that he suggested to the principal debtor the securing of this letter of guaranty; that he also suggested the creditors' meeting and the amount they should be offered on the proposed compromise settlement; that he arranged for the principal debtor to expedite securing a judgment against him by plaintiff company to be used as a kind of bludgeon over the other creditors to induce them to accept the compromise settlement. The evidence further shows that plaintiff's president attended this creditors' meeting, after his company had secured this letter of guaranty by which the plaintiff was to get all of its account, and the president told the other creditors that he thought that 20 per cent. was all that "we" could get, which was better than to have the debtor go into bankruptcy. It is not reasonable to suppose that the president would have used this language and taken this position at the creditors' meeting if he told them that his company had secured this guaranty for all of its account. Especially is this true when we consider that the president admits in his testimony that it was not his intention to accept for his company the 20 per cent. settlement, but to credit the amount on the account and to hold the defendants for the balance. In other words, his own testimony points to no other conclusion but that the president was leading the creditors to believe that the best thing for all of the creditors (including his company) was to accept the compromise offer, while at the same time he had no intention of accepting the settlement for his company as a full payment, but, on the contrary, knew that his company at the very time he was making these statements to the other creditors was secured for its entire account.

In the relation which the plaintiff's president bore to the other creditors at the meeting in which he acted as sponsor for the proposed settlement by prearrangement with the debtor, it was his duty to give the other creditors full information as to the arrangement whereby his company was to be paid in full while he was endeavoring to persuade them to accept 25 per cent. Moreover, if he had made such fact known to them, it is reasonable to assume that he would have so testified when he was giving an account of his acts at the meeting. The situation of plaintiff's president at this meeting was such that, as to him, suppressio veri was just as much reprobated in law as suggestio falsi.

It is true that the composition did not go through. However, as we found in our original opinion, the guaranty on which the suit is based arose out of, and had as its purpose and eventual result, a secret preference over the other creditors. The fact that the creditors did not agree to the composition did not validate the attempted preference. C.J. vol. 12, p. 289, § 88; John T. Hardie's Sons & Co. v. Scheen, supra.

Our re-examination of the case has served to convince us more firmly of the correctness of our original decree.

Our former decree is therefore reinstated and made the final judgment of this court.