O'NEIL v. JOHNSON et al.

SAME v. GOODSPEED.

Nos. 1566–S, 1567–R.

District Court, N. D. California, N. D.

Oct. 3, 1939.

Seth Millington, of Gridley, Cal., for plaintiff.

Harold Sawyer, of San Francisco, Cal., for defendants.

ROCHE, District Judge.

Plaintiff, as Receiver for the First National Trust and Savings Bank of Chico, hereafter called the Chico Bank, is suing defendant farm owners on two promissory notes made out to the Chico Bank. Separate actions were commenced by plaintiff. One suit was based on a note signed by W. B. and Rose W. Johnson; the other, on a note made out by Ryland C. Goodspeed, Jr. The two cases were almost identical in their facts and were governed by the same law, so they were consolidated for trial.

In his complaint against the Johnsons, plaintiff sets up a note for $1,438.85, only a small part of which has been paid; and in his complaint against Goodspeed, Jr., plaintiff sets forth a note for $2,500. By way of answer, defendants allege that the notes are void, because they were exacted by duress at a time when the Federal Land Bank of Berkeley, hereafter called the Land Bank, had submitted plans for refinancing defendants by means of loans which would enable them to keep their farms. These loans were to be made on condition that the creditors of defendants, including the Chico Bank, would accede to partial payment of their claims in full settlement of the obligations owed by defendants. It is further alleged, in the separate answers of defendants, that plaintiff entered into the scale-down agreements prepared by the Land Bank, accepted payment in full satisfaction of the obligations owed by defendants, and now has no valid claims against defendants. The sole issue raised by the pleadings is the validity of the notes upon which plaintiff rests his case. Before the status of the notes is determined, the factual background of each case will be briefly reviewed.

In the Johnson case defendant, W. B. Johnson owed the Chico Bank $19,565.75 in the year 1934. He was unable to pay this sum to the Chico Bank, which was then in the hands of a Receiver, F. M. Porter. Johnson appealed for assistance to the Land Bank, which agreed to make a loan on condition the Chico Bank would accept $16,000 in full settlement of its claim. Mr. Porter agreed to this scale-down settlement, as is evidenced by the contents of two letters which he wrote to the Land Bank. The following paragraph appears in the first letter, dated May 5, 1934:

"We have instructed the Oroville Title Company to record said deed of reconveyance, waiving any interest we have in said fire insurance policy, and cancelling all the notes secured by said deed of trust, said notes have a face value of $19,565.75; the consideration for this being, that there is to be sent to this bank the net proceeds of a loan being made by the Federal Land Bank and/or Land Bank Commissioner, in the total amount of $16,000.00 there being certain charges and expenses in connection with said loan which are to be deducted, leaving the net amount of said loan to be forwarded to this Bank."

Then, on June 8, 1934, after the Land Bank had completed its payment to the Chico Bank, Porter wrote:

"This is to acknowledge receipt of the sum of $15,224.30 which is in full satisfaction of the above mentioned indebtedness of Dr. W. B. Johnson, which is evidenced by the fact that the notes representing said indebtedness were sent to the Oroville Title Company with instructions to cancel same and deliver for the account of Dr. Johnson upon the payment of the sum of $15,224.30. Inclosed also was a deed of reconveyance with instructions to deliver the same to be recorded.

"According to my understanding this has all been accomplished and we have received the above mentioned amount in full satisfaction of said indebtedness."

Despite the language contained in these letters, the then Receiver for the Chico Bank obtained a note from the Johnsons on May 5, 1934, for $1,438.85. It is this note, less a small sum which has been paid on it, which is being sued on.

In the Goodspeed, Jr., case, in 1936 defendant's father owed the Chico Bank $10,000 which was secured by a second deed of trust on his farm property, which was subject to a first deed in the sum of $12,000. Defendant's father also owed the Chico Bank four unsecured notes which aggregated $4,279.22, exclusive of interest, at the time. In consideration of defendant's taking over the encumbered property from his father, clearing title, paying back taxes, settling certain claims which entailed an expenditure of about $7,500, and undertaking the remaining obligations of Goodspeed, Sr., the Land Bank agreed to enter into a loan agreement whereby the Chico Bank, thru its Receiver, would receive $2,500 in full settlement of its claim against Goodspeed, Sr. The terms of the scale-down agreement entered into by defendant and the Chico Bank are shown by the following creditor's agreement which was approved by the Receiver on December 12, 1936, when he received the above mentioned sum from the Land Bank:

"That I will accept in full and complete settlement and payment of my above claim the sum of $2500.00, and that I have not, directly or indirectly, made or entered into any agreement or understanding with anyone whomsoever whereby I shall receive from said debtor any note, mortgage or other consideration save and except the sum last above mentioned; that when such sum has been received by me, that said debtor will not remain indebted to me upon any account whatsoever; that I will not, after having received such sum, attempt in any way, directly or indirectly, to collect, nor will I accept, from said debtor upon and because of the above claim anything of value whatsoever.

"This agreement is for the express benefit of the debtor as well as the Federal Land Bank of Berkeley, the Land Bank Commissioner, and the Federal Farm Mortgage Corporation."

On December 14, 1935, two days after this agreement was signed by the Receiver, he obtained a note from Goodspeed, Jr., in the sum of $2,500, as payment for his father's unsecured obligations to the Chico Bank. It is this note which is being sued upon in the Goodspeed, Jr., case and which the answer alleges is void.

The law which controls scale-down agreements entered into between a creditor and a farm debtor at the behest of the Federal Land Bank has been set forth in several decisions, all of which hold that the agreement is valid and binding upon the parties. Notes which are obtained by a creditor in violation of his scale-down arrangement, approved by the Federal Land Bank, have been held void in Smeltzer v. McCrory, 1937, Tex.Civ.App., 101 S.W.2d 850 and in Russell v. Douget, La.App., 1936, 171 So. 501, both of which cases support the contention of defendants that the notes held by the Chico Bank are illegal and of no effect. The case of Federal Land Bank of St. Paul v. Koslofsky, 1936, 67 N.D. 322, 271 N.W. 907, holds that a note which is held by a creditor contrary to the terms of his scale-down agreement is not only void as between the parties to the agreement but is also a nullity as against the Federal Land Bank. The prac-

tice of forcing notes out of oppressed debtors has been uniformly condemned.

There are two reasons behind the law which holds notes obtained in violation of scale-down agreements invalid. In the first place, the Federal Land Bank wishes to protect its own financial position as the new creditor of a farmer who has found it impossible to continue operations under his previous load of debts. Promissory notes extracted from the debtor to make up the difference between the amount paid under a scale-down settlement and the amount originally owed, rebuild the very debt structure which was reduced by the scale-down agreement. The farmer is placed in his old position, with the only change being that of the personnel and the order of his creditors. The fact that the Federal Land Bank holds a first mortgage or a first deed of trust is no answer to the creditor who has extracted a promissory note out of the debtor, for the favored lien position of the Land Bank does not give rise to the true security which is intended, namely, the security of a successful farm, whose earnings are ample to assure repayment of the Land Bank loan. The farmer, as already demonstrated, is unable to realize sufficient income to take care of his obligations under his former load of debts. Hence the courts declare promissory notes obtained in violation of a scale-down agreement, and which re-create the old debt structure, void.

In the second place, and as a corollary of the first, the Federal Land Bank, wishes to extend relief to farmers so that they are able to continue operations on their property. The purpose of the Federal Land Bank Law would be nullified if creditors were able to obtain second lien or unsecured notes in addition to the payments which they receive under the scale-down agreements. The Land Bank was established to assist farmers; it was not created so that a federal agency might acquire farm lands by foreclosure proceedings. By means of debt reduction, the farmer was to be placed in a position where he might make a success of his business. If the individual creditor were permitted to ignore the debt reduction and were allowed to exact notes for the balance of the old debt, the farmer would be no better off than he had been before the Land Bank came to his assistance with a loan. Hence,

in order to carry out the primary purpose of the law, the courts have declared such creditors' notes void.

The law is clear on the subject of scale-down agreements, as carried out under the Rules of the Federal Land Bank. Such agreements are valid, and notes taken in violation of them are void. Plaintiff himself concedes this, and admits that if the Chico Bank had been in private hands, there would be no cause of action on the notes. But plaintiff argues that the presence of a Receiver for the Chico Bank modifies the law.

Section 192 of the Banking Act (12 U.S.C.A.) places the Receiver of a bank under the direction of the Comptroller, and requires the Receiver to obtain a court order for the settlement of all the claims of the bank. In both of the cases at bar, the Receiver complied with the provisions of the Banking Act by obtaining a court order approving the settlement of the Chico Bank's claims against Johnson and against Goodspeed, Jr. Plaintiff contends that the procedure of the Receiver gives validity to promissory notes which would otherwise be void. But this is not a correct statement of the law. In the first place, the court may not override the Federal Land Bank Law when such law is constitutional. In the second place, the evidence shows that the court was not informed as to the circumstances under which the notes in question were exacted. The court orders, at the most, may be construed to sanction the conduct of the Receiver; they may not make valid that which is invalid. Furthermore, the evidence shows that the Federal Land Bank was not presented with a complete copy of the court orders and that the Land Bank made its loans without knowledge of the exaction of the promissory notes by the Receiver for the Chico Bank. Thus, the notes were null as against the Federal Land Bank as well as against the defendants. Despite the fact that a Receiver acted for the Chico Bank in the principal cases, the established law in scale-down agreements is applicable and the notes in both the Johnson and the Goodspeed, Jr., cases are void.

Upon a review of all of the evidence, the court holds that defendants are entitled to judgment, together with their costs. Findings shall be prepared by defendants.