# FRANK KNIEFEL v. FRANCIS KELLER AND ANOTHER. FEDERAL LAND BANK OF ST. PAUL AND ANOTHER, INTERVENERS.[1]

February 9, 1940.

No. 32,170.

[1]Reported in 290 N. W. 218.

*John Thorpe, Michael A. Schmitt,* and *Robert J. Barry,* for appellants.

. *Moonan & Moonan,* for plaintiff-respondent.

. JULIUS J. OLSON, JUSTICE.

Interveners appeal from an order sustaining plaintiff's demurrer to their complaint in intervention upon the ground that the facts alleged therein "do not constitute a cause of action." The court's memorandum assigns as reasons for its order:

Interveners "are strangers to" and "have no interest whatever" in this action; all allegations by them pleaded and upon which they rely "may properly be interposed" by defendants in the main action; plaintiff claims nothing as against them, "and if plaintiff . at the end of the lawsuit is successful in making any recovery against the defendants, such recovery and any judgment entered thereon would be a lien subsequent to the rights of the interveners as mortgagees."

It is necessary to state the facts alleged by plaintiff, those pleaded by defendants as opposed thereto, and the allegations upon which interveners rely for their cause in intervention.

The complaint in the main action alleges: On October 12, 1935, plaintiff was the owner of a farm in Steele county and on that day entered into an executory contract for the sale thereof to defendants at the agreed price of $11,800, of which $3,000 was paid and the remaining $8,800 was to be met March 1, 1936. On the same day the parties made another agreement (exhibit B, copy pleaded in complaint), by the terms of which defendants were to apply for a federal farm loan with which to meet the $8,800 payment. Thereby plaintiff agreed that he would "accept the sum realized from said loan and will take the note of" defendants "for

the balance necessary" to make up the difference. Defendants' answer admits and alleges that on October 13, 1935, they, "at the request of the above named plaintiff made application to the Federal Land Bank, * * * and the Land Bank Commissioner * * * for a loan on said premises of" $9,400; that on February 21, 1936, plaintiff executed and delivered to defendants a creditor's agreement (a copy of which is attached to the answer) wherein plaintiff agreed to accept in full and complete payment of the balance of the purchase price $7,048, "which sum was paid to said plaintiff and accepted by him pursuant" thereto on April 30, 1936; that on the last mentioned date plaintiff also executed and delivered a receipt "for full payment of deed," a copy of which was also attached to and made a part of their answer. (The mentioned exhibits will be referred to more fully when we reach interveners' complaint in intervention.) For his reply, in addition to a general denial of new matter, plaintiff pleaded, by way of avoidance, that there was "no consideration paid plaintiff" for the execution of the creditor's agreement or the receipt referred to in the answer; that "said agreements were signed on the understanding and agreement that they were subject to the [original] agreement of the parties"; that plaintiff in executing the creditor's agreement and the mentioned receipt "signed the same without reading or without knowledge of the contents or effect thereof and on the representation and statement made to him by defendants and their agent acting for them that the said creditor's agreement and receipt did not change" the prior agreements; that they represented "that the only effect thereof was to release said land so that said loan would be made."

Interveners' complaint is a lengthy one. It sets forth their respective corporate entities and authority under federal law creating them; that pursuant to such acts they were formed for the purpose of providing "a comprehensive system of farm credit to American farmers"; that the acts on which they rely had for their purpose "the rehabilitation of agriculture by refinancing the debts" of farmers and "in a measure" to relieve them from the

pressure and burden of debts resulting from economic conditions beyond their control; that in October, 1935, defendant Francis Keller applied to the Federal Land Bank and the land bank commissioner for a loan upon this farm in the amount of $9,000. In that application he stated that he desired the proceeds for the purpose of purchasing the mentioned land, also stating that he was indebted to other creditors in the amount of $7,510. In December the Land Bank, acting in its own behalf and for the commissioner, "conditionally approved loans to be made by said Land Bank in the sum of $3,800, and to be made by said Commissioner in the sum of $3,300," the proceeds whereof were to be used to pay all of Keller's obligations, including plaintiff's. (An exception was made in respect to a chattel loan not exceeding $500.) While these matters were pending and "before the completion of the loans," both parties to the main action entered into a written agreement, bearing date February 21, 1936, under the terms of which plaintiff, "for the purpose of inducing" interveners to make these loans and for the purpose of inducing them "to release, distribute and pay out the proceeds" therefrom, and, being a creditor of those receiving such loans to the extent of $8,800, did "undertake, promise, agree and represent as follows:

"That I will accept in full and complete settlement and payment of my above claim the sum of $7,048.00, and that I have not, directly or indirectly, made or entered into any agreement or understanding with anyone whomsoever whereby I shall receive from said debtor(s) any note, mortgage or other consideration save and except the sum last above mentioned; that when such sum has been received by me that said debtor(s) will not remain indebted to me upon any account whatsoever; that I will not, after having received such sum, attempt in any way, directly or indirectly, to collect, nor will I accept, from said debtor(s) upon and because of the above claim anything of value whatsoever.

"This agreement is for the express benefit of the debtor(s) or any of them, as well as The Federal Land Bank of Saint Paul, the

Land Bank Commissioner, and the Federal Farm Mortgage Corporation."

On April 30, 1936, plaintiff executed an instrument named "Receipt for Full Payment of Deed" under the terms of which plaintiff acknowledged full and complete payment "of any and all unpaid purchase money," disclaiming "any further sum whatsoever due thereon," and releasing "in full and forever any claim of interest" in the farm. The full amount ($7,048) available to defendants under these loans was duly paid plaintiff pursuant to and in conformity with the exhibits to which we have referred. In addition, they aver that plaintiff executed these agreements with full knowledge that interveners were in good faith relying upon the truth of the representations therein and thereby made; that if they had known the facts to be as now claimed by plaintiff, or if they had been informed of his real intention to collect his entire claim against defendants, no such loans would have been made; that the parties to the main action are collusively attempting to bring about a result likely to interfere with their respective claims against defendants; and, lastly, that plaintiff by his conduct and representations is estopped from questioning the existence and validity of these instruments. They pray that the agreement referred to as exhibit B in the complaint (the one amending the original contract of sale) should be cancelled and adjudged null and void, and for such other relief as may be just.

1. The beneficent purpose of loans made by federal agencies under and pursuant to the emergency farm mortgage act of 1933, 48 St. 48, § 32, 12 USCA, § 1016(e), was to enable persons in debt and without ability to make payment to constitute such agencies the sole creditors, thereby eliminating by way of compromise all other creditors. International Harv. Co. v. Young, 288 Mich. 436, 285 N. W. 12, 14; Geel v. Valiquett, 292 Mich. 1, 289 N. W. 306, 311.

2. Similar in plan and purpose is the home owners loan act of 1933, § 8, 12 USCA, § 1467(e). In Pye v. Grunert, 201 Minn. 191, 193, 275 N. W. 615, 616, 276 N. W. 221, we had occasion to

114

pass upon the penalty that goes with a violation of the cited section. We said, quoting from Sage v. Hampe, 235 U. S. 99, 105, 35 S. Ct. 94, 95, 59 L. ed. 147:

" '* * * it long has been recognized that contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent cannot be made the ground of a successful suit.' "

3. The cases hold generally that an obligation assumed in violation of such scale-down agreement as we have here is contrary to public policy and, as such, fraudulent. The following cases so hold: Jones v. McFarland, 178 Miss. 282, 173 So. 296; Federal Land Bank v. Koslofsky, 67 N. D. 322, 271 N. W. 907; Smeltzer v. McCrory (Tex. Civ. App.) 101 S. W. (2d) 850.

Reading the Koslofsky case discloses a situation practically identical to the present except that here interveners are seeking to establish their rights in intervention instead of bringing a suit as plaintiffs directly against the parties to the main action as defendants. Helpful, too, is Geel v. Valiquett, 292 Mich. 1, 289 N. W. 306.

4. The remaining, and we think decisive, question is whether interveners have shown such an interest in the result of the pending action as to entitle them to intervention under 2 Mason Minn. St. 1927, § 9263, which provides:

"Any person having such an interest in the matter in litigation between others that he may either gain or lose by the direct legal effect of the judgment therein may serve a complaint" in intervention.

As we have seen, the basis for the order sustaining the demurrer is that interveners have nothing to gain or lose because plaintiff's judgment, if he obtains one, "would be a lien subsequent to the rights of the interveners as mortgagees." The cases do not, however, hold pecuniary loss or gain as the only test. Interveners here, as in the Koslofsky case, 67 N. D. 322, 271 N. W. 907, seek to accomplish the surrender and cancellation of an instrument

which, if plaintiff prevails, will result in detriment to their rights and which is in violation of representations made when their money was paid over to plaintiff. They say plaintiff represented in his creditor's agreement that he would accept $7,048 "in full and complete settlement and payment" of his $8,800 claim; that he had not, "directly or indirectly, made or entered into any agreement or understanding with anyone" whereby he would receive any consideration "save and except" the sum paid by interveners. At that time he knew he had executed exhibit B, which by its terms was wholly contrary to the representations made to them; that if plaintiff prevails in his action against defendants then, obviously, he is getting substantially more and in addition to what he promised and represented he would take when he accepted the money loaned upon defendants' farm. He therein stated certain facts as then existing, but left out other essential facts in dealing with interveners. He also made definite promises respecting his future conduct which he now deliberately casts aside and refuses to fulfill. It seems perfectly clear, in view of what has been said, that debtors already overburdened with obligations and as such intended to be aided by federal relief agencies to help them in their effort at rehabilitation, if such arrangement as plaintiff contends for can be sustained, are getting no help from a generous government and its established agencies having for accomplishment this purpose. The question, so it seems to us, is not whether the government stands to gain or lose its money in this particular case but whether a creditor, such as plaintiff, may collusively and fraudulently liquidate the greater part of his claim by means of federal funds so furnished and still insist upon full enforcement of the balance by illegal means. Such a result is unthinkable. Courts of equity are not impotent to right human wrongs and to set for naught underhanded and dishonest dealings.

5. That interveners are instrumentalities of the national government is clear. As to the Federal Land Bank, see Smith v. Kansas City T. & T. Co. 255 U. S. 180, 41 S. Ct. 243, 65 L. ed.

577; as to the Federal Farm Mortgage Corporation, see 12 USCA, §§ 1020, 1020 (b). The land bank commissioner is an officer of the United States, 12 USCA, § 653. So, if the fraud complained of would result in impairment of the efficiency of the commissioner or interveners in their proper administration of congressional enactments, it is not necessary that "the government shall be subject to pecuniary loss by the fraud but only that its legitimate official action and purpose shall be defeated by misrepresentation or chicane." Jessewich v. Abbene, 154 Misc. 768, 770, 277 N. Y. S. 599, 602 (citing cases); Pan American P. & T. Co. v. United States, 273 U. S. 456, 47 S. Ct. 416, 71 L. ed. 734.

Plaintiff received more than $7,000 of the government's money by virtue of the scale-down agreement. It was paid upon his promise and representation that this was to be payment in full of his claim against defendants. This he could not have obtained if the truth had been disclosed to the federal instrumentalities having in hand the disbursement and application of these funds. That being the situation, we think interveners "have suffered an injury as the direct result of the fraud practiced upon them." Federal Land Bank v. Koslofsky, 67 N. D. 322, 329, 271 N. W. 907, 910. In McAllen v. Hodge, 92 Minn. 68, 72, 99 N. W. 424, 425, this court sustained the right of intervention because intervener was "interested in the success of defendants * * * in preventing such litigation" between the parties to the main action.

6. Under the creditor's agreement plaintiff specifically stated that "this agreement is for the express benefit" of debtor defendants "as well as" the interveners. Thereby he made them creditor beneficiaries and invested them with rights as such. For this reason alone interveners have rights to protect in this case. This subject matter is adequately stated in Restatement, Contracts, c. 6, § 133, subd. (1) (b), and "Illustrations" under that are found on pp. 154, 155.

Order reversed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.