## BELL v. JONES

No. 6239.   Decided February 14, 1941.   (110 P. 2d 327.)
Rehearing Denied April 14, 1941.

88

*Leon Fonnesbeck,* of Logan, for appellant.

*Jesse P. Rich,* of Logan, for respondent.

McDONOUGH, Justice.

This case involves a suit upon a promissory note executed by appellant in favor of Alfred J. Bell, who later transferred the note to respondent, plaintiff below. Appellant's defenses to the action in the lower court were (1) that the note had been given to A. J. Bell without any consideration therefor; and (2) that it had been compromised and paid. Appellant further contended respondent was not a holder in due course for value and hence that such defenses were available against the latter. He also sought by counterclaim to recover certain amounts paid on said note subsequent to the supposed compromise and settlement.

The court, although holding that respondent was not a "holder in due course" of the note but merely an "assignee of the same," found in favor of respondent that there was consideration for the note and that the amount due thereon had not been compromised and paid.

It would appear from the record that for some reason not all of the facts and circumstances surrounding the execution of the note were revealed to the trial court. On

some pertinent facts there is no evidence in the record, either because there was no attempt to introduce evidence thereon or because the parties to the transaction had no definite recollection thereof. However, the facts appear to be as follows: On February 6, 1928, A. J. Bell and appellant entered into an agreement for the purchase by appellant of a certain tract of land, the purchase price being $3,200. $200 was to be paid immediately, the balance being payable in yearly installments of $500, together with certain interest semi-annually. It was further agreed that the first three installments totalling $1,500 would be paid to the Utah Mortgage and Loan Corporation on a $2,500 mortgage held by said corporation on the land in question, as well as on other land owned by Bell. The evidence does not disclose whether any payments were ever made to the mortgage corporation, although on the back of the escrow agreement introduced in evidence by appellant have been entered various payments of interest and a $500 payment of principal, dated July 1, 1929, after which payment the balance of unpaid principal shown thereon is $2,500. The final interest payment is dated January 1, 1931.

The record further shows that on December 1, 1930, appellant executed a mortgage on the property purchased from Bell in favor of one Bodrero to secure the payment of $1,850 — the sum of $2,000 according to appellant's testimony having been borrowed from Bodrero "to finish paying Mr. Bell" on the escrow agreement, though the record is silent as to whether it was so used.

On January 2, 1931, appellant and wife joined with A. J. Bell and wife in executing a mortgage in favor of the Utah Mortgage and Loan Corporation to secure the payment of $1,100 to said corporation.

In 1933 appellant commenced negotiations with the Federal Land Bank of Berkeley for a loan, which loan was finally approved for $3,500. It was during these negotiations, but shortly before the loan was finally approved, that the note here in question (in the sum of $850) was executed.

One of the conditions for granting the loan was that appellant's total indebtedness was not to exceed $4,700. From the record it does not appear that his total indebtedness exceeded $4,700. Nevertheless a compromise agreement was entered into whereby A. J. Bell agreed to accept $150 in full satisfaction for $400 owing from Jones; Bodrero agreed to accept $1,850, and the mortgage corporation agreed to accept $1,100 in satisfaction of the amounts owing to each. These sums were paid to the respective creditors from the $3,500 loan obtained by Jones from the Bank.

It appears from the documentary evidence introduced that when the loan charges, accrued taxes on the property, stock subscription and other expenses were deducted from the amount of such loan, the balance thereof was equal, or approximately so, to the three items enumerated in the aforesaid "scaledown" agreement.

Appellant's first point is that since it is admitted that the only consideration for the note sued on was the indebtedness" owing from Jones to A. J. Bell by virtue of the land transaction, the trial court erred in finding that there was consideration for the note because the evidence shows a complete payment of that indebtedness.

The evidence, however, does not show that Jones ever paid the amount of the purchase price of the land. While appellant testified that he borrowed $2,000 from Bodrero "to finish paying Mr. Bell," he did not testify, nor does the record anywhere show, that any such sum was ever paid to Mr. Bell. There is no evidence that the $1,500 which by the escrow agreement appellant agreed to pay to the mortgage company was ever paid until the execution of the $1,100 mortgage note referred to hereinabove. The only payment of principal indicated on the back of the escrow agreement, as stated heretofore, was for $500. There were also several checks introduced in evidence, indicating the payment of various sums to Mr. Bell by Jones, but whether they were for principal or interest does

not appear. Nor does it appear that such payments were sufficient to reduce the balance unpaid at the time of the scale down agreements below the sum of $1,250—the amount of the face of the note sued on, plus the $400 compromised—which is the amount testified to by Bell as unpaid at such time.

It should be observed that while the original mortgage to the Utah Mortgage and Loan Corporation is recited in the escrow agreement to be a $2,500 mortgage made in 1923, there is no evidence that the principal amount unpaid thereon on the date of the agreement was $2,500. The inference from the agreement by the vendee to pay the first $1,500 of the purchase price to the mortgage company is that such was the unpaid amount of the principal of the obligation secured thereby. This inference is supported by the fact that in 1931 the parties executed the $1,100 mortgage, heretofore adverted to, after but $500 was shown to have been paid on the principal of the purchase price—presumably to the mortgage company since that was in accordance with the agreement.

Payment is an affirmative defense and he who alleges such defense has the burden of proving it. *State Bank of Beaver County* v. *Hollingshead*, 82 Utah 416, 25 P. 2d 612; 11 C. J. S., Bonds, § 101. The evidence is clearly not such on this issue that we can say that the trial court erred in finding against appellant thereon.

Appellant's second point is that the agreement by A. J. Bell to take $150 in settlement for $400 due from appellant constituted an acknowledgment by Bell that the sum of $400 was the total indebtedness owing from Jones which indebtedness was compromised and settled by the payment of the $150.

The record does not sustain this contention. The agreement to take $150 reads: "in full satisfaction of the existing obligation of $400.00". Nowhere is it stated that the $400 obligation is the only obligation existing between appellant and A. J. Bell, or that $400 is the balance remaining un-

paid on the land transaction. The very fact that a note for $850 was taken by Bell before signing the agreement indicates that he had no intention of releasing appellant as to the amount of the note, although he might be willing to take $150 in payment of a $400 indebtedness. This would make a total of $1,250 due from appellant to A. J. Bell on the land transaction, which fact is indicated by Bell in his testimony.

Appellant's final point raises the question whether the $850 note is valid in view of the agreement to accept $150, there being a definite public policy against side agreements to pay sums of money in transactions ▪▪ of this kind where a party is seeking to obtain a loan from a federal agency. The principle is well stated in *O'Neil* v. *Johnson, D. C.*, 29 F. Supp. 307, 308, as follows:

"The law which controls scale-down agreements entered into between a creditor and a farm debtor at the behest of the Federal Land Bank has been set forth in several decisions, all of which hold that the agreement is valid and binding upon the parties. Notes which are obtained by a creditor in violation of his scale-down arrangement, approved by the Federal Land Bank, have been held void in *Smeltzer* v. *McCrory*, Tex. Civ. App. 1937, 101 S. W. 2d 850 and in *Russell* v. *Douget*, La. App. 1936, 171 So. 501, both of which cases support the contention of defendants that the notes held by the Chico Bank are illegal and of no effect. The case of *Federal Land Bank of St. Paul* v. *Koslofsky*, 1936, 67 N. D. 322, 271 N. W. 907, holds that a note which is held by a creditor contrary to the terms of his scale-down agreement is not only void as between the parties to the agreement but is also a nullity as against the Federal Land Bank."

See also, *Richard R. Adams Co.* v. *Pacific States Savings & Loan Co.*, 34 Cal. App. 2d 723, 94 P. 2d 370; *Johnson* v. *Matthews*, 301 Ill. App. 295, 22 N. E. 2d 772; *Meek* v. *Wilson*, 283 Mich, 679, 278 N. W. 731; *Jessewich* v. *Abbene*, 154 Misc. 768, 277 N. Y. S. 599.

After a thorough examination of the record, however, we must conclude that the facts in this case, as revealed by the evidence, do not make the principle above enunciated applicable here. In the first place, there is no evidence that the giving of the $850 note would violate ▪ the provisions of the contract with the Federal Land

Bank which permitted an indebtedness of $4,700, while the loan was for only $3,500. Nor does the evidence show that A. J. Bell, in agreeing with the Federal Land Bank to take $150 in full settlement for an indebtedness of $400, acknowledged or represented that the $400 indebtedness was the total amount owing from Jones. No attempt is being made to recover the difference between the $150 and the $400, which is the amount A. J. Bell agreed to scale down. Nor is there any evidence that the $850 note was given to induce Bell to make the scale down agreement on the $400 indebtedness.

On the other hand, there is some evidence in the record to the effect that there was at the time the note sued on was executed a total of $1,250 owing from Jones to A. J. Bell, and that the latter agreed to take a note for $850 for that amount and further consented to scale down the balance ($400) to the sum of $150, which was done. There is no public policy against so doing where the agreement with the Federal Land Bank was such that Jones was permitted to have an indebtedness of $1,200 in excess of the amount of his loan from the Bank. Certainly the trial court might reasonably conclude from the evidence before it, that since the loan finally approved was for $3,500, plaintiff's assignor agreed to take the $150 available therefrom after payment of the other lien charges and release but $400 of the total amount due him from defendant.

Appellant has, therefore, failed to prove any defense to the note sued on. Respondent having made out a prima facie case for recovery on the note, the trial court did not err in finding in his favor.

The argument is also made that no action will lie here for the reason that A. J. Bell assigned all of his interest in the escrow agreement to the Utah Mortgage and Loan Corporation. However, the evidence is sufficient on this point to show whether such assignment was ever delivered to the corporation. In fact, there is no evidence of any such assignment except a copy thereof which

apparently was improperly introduced in evidence as a part of the escrow agreement. No mention of it appears anywhere in the evidence. It cannot, therefore, be the basis of a reversal in this court.

It is further contended that the judgment exceeds the pleadings by giving respondent a vendor's lien on the premises for the amount due on the note. With this we cannot agree. While it is true that the judgment recites that the amount of the judgment constitutes "the balance due on the purchase price" of the land purchased by appellant from A. J. Bell (description of which land is inserted in the judgment) there is nothing which imposes or attempts to impose a lien on the property for the payment of the amount adjudged to be due.

Nevertheless, since the action is simply one for judgment on the note, that portion of the judgment concerning which complaint is made has no place therein; and since a judgment similarly worded might in a different case be claimed the proper foundation for proceedings to decree and foreclose a vendor's lien—a matter concerning which we express no opinion—we think the judgment entered should be modified by striking therefrom the portion thereof to the effect that the judgment entered is for the balance of the purchase price of the described realty.

By way of summary: An action was commenced to recover the balance due on a promissory note which recited, among other things, that it had been given for consideration. The defense was lack of consideration; accord and satisfaction of the note; or that the note was void on the ground of public policy because of a secret side agreement to pay a sum of money not permitted under a scale down agreement by the payee of the note with the Federal Land Bank. The court found as a fact that there was consideration for the note; that there had been no accord and satisfaction as to the $850 indebtedness evidenced by the note and that the note was not a secret side transaction in violation of the scale-down agreement with the Bank and was

therefore not void as against public policy. In view of the evidence, we cannot say that the trial court was in error in so finding.

The case is remanded to the lower court with instructions to modify the judgment as herein directed. As so modified the judgment is affirmed. Costs to respondent.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.