**DAVID BILGORE, an individual doing business under the firm name and style of David Bilgore & Company, and DAVID BILGORE & COMPANY, INC., a corporation, v. C. T. GUNN and SUSANNA C. GUNN, his wife.**

9 So. (2nd) 184                                              Division B
May 26, 1942                          Rehearing Denied June 19, 1942

800

Alfred P. Marshall, for appellants.

Wylie & Warren, for appellees.

CHAPMAN, J.:

There is challenged on this appeal a final decree entered by the Circuit Court of Pinellas County, Florida, cancelling as void *ab initio* and contrary to public policy a note secured by a crop lien from C. T. Gunn and Susanna C. Gunn, his wife, to David Bilgore & Company, Inc., due one year after date. Payments were made thereon from time to time, and a renewal had, when a note for the sum of $5,079.44 was given maturing four years after date, and subsequent thereto payments were made thereon.

Prior to the giving of the cancelled note, C. T. Gunn applied to and obtained a commitment from the Federal Land Bank for a loan of approximately $13,000.00 with which to pay his indebtedness then due the David Bilgore Company, Inc. The loan was closed and David Bilgore Company, Inc., received the proceeds thereof, but it was insufficient in amount to liquidate the entire indebtedness due. After the loan was closed, Gunn gave David Bilgore Company, Inc., a note for the amount remaining due after crediting the amount received from the Federal Land Bank to the Gunn account.

Presented to the Federal Land Bank of Columbia was a written statement setting out the indebtedness due by Gunn to David Bilgore & Company, Inc., The statement of the indebtedness was a part of the original application for the loan. The statement was dated April 13, 1933, when the total indebtedness was represented to the Federal Land Bank as being in the sum of $10,390.25. This statement, being a part of the application for the loan, was considered by the bank in reaching a conclusion, or was one of the inducements to it for making the commitment to Gunn and Bilgore & Company, ultimately resulting in the loan, which was closed early in January 1934. On the vouchers issued by the Land Bank to Gunn and wife and David Bilgore & Company, Inc., in satisfaction of the Bilgore indebtedness, is the language viz: "In Payment of Proceeds of Loan No.——— and Accepted in Full Settlement of the Following Amount" and "In Payment of Proceeds of Loan No.——— and Accepted in Full Settlement of the Following: Amount." David Bilgore & Company, Inc., and C. T. Gunn and Susanna Gunn, his wife, signed the foregoing statement.

In many jurisdictions where the scale down agreements have been considered the holdings are uniform that such agreements are valid and binding on the parties on the theory that the Federal Land Bank desired to place its creditor in a sound financial position so that he could pay the amount of the mortgage to the bank at the maturity date. If notes are upheld when given in derogation of the scale down agreements, then the purpose of the Congressional Act authorizing the loan would be defeated. The debt under which the farmer was struggling would remain unchanged. It was the reduction of the farmer's debts

that was desired so that he might make a success of his business. If creditors were permitted to disregard or ignore the debt reduction agreement and accept notes for the balance due on the old debts, then the farmer would be in no better position than he had been prior to the time the bank came to his assistance with the loan. It was in legal effect and accord and satisfaction of the entire indebtedness of the farmer. See O'Neil v. Johnson, 29 Fed. Supp. 307, Geel v. Valiquett, 292 Mich. 1, 289 N. W. 306; Oregon & Western Colonization Co. v. Johnson, 164 Ore. 517, 102 Pac. (2nd) 928; Russell v. Douget, (La.), 171 So. 501; Kniefel v. Keller, 207 Minn. 109, 290 N. W. 218; International Harvester Co. v. Young, 288 Mich. 436, 285 N. W. 12; Federal Land Bank of St. Paul v. Koslofsky, 67 N. D. 322, 271 N. W. 907; May v. Whitbeck, 111 Mont. 568, 113 Pac. (2nd) 332; Federal Land Bank of Columbia v. Blackshear Bank, 182 Ga. 657, 186 S. E. 724.

The appellant contends that the bank was not misled by Bilgore's action and that it had notice, or by diligence could have acquired knowledge of the "oral carry over" between Gunn and Bilgore; and that no concealment existed, and no fraud was perpetrated upon the bank. The answer to these several contentions is that the terms of the Congressional Act prohibits these "shake down" or oral "carry over" agreements and they are unenforceable and fraudulent. One of the plaintiffs, C. T. Gunn, disabled by illness, by power of attorney authorized his daughter to maintain the suit at bar. Under the circumstances here presented she is lawfully authorized so to do.

The final decree cancelled the note and adjudicated the balance due by the appellant to the appellee. The

figures do not appear in the record, nor is it contended that this provision of the final decree is erroneous. There exists a presumption of the correctness of the rulings of the lower court.

The decree is without error and accordingly is hereby affirmed.

The decree is without error and accordingly is hereby affirmed.

BROWN, C. J., TERRELL, and THOMAS, JJ., concur.

ON PETITION FOR REHEARING

CHAPMAN, J.:

It is admitted that Bilgore & Company signed the statement of indebtedness and agreement of creditors whereby it agreed to accept $10,390.25 of the Federal Land Bank as settlement of the Gunn indebtedness. Evidence of indebtedness was sent to the Federal Land Bank, when checks or vouchers were forwarded to Bilgore & Company for the stipulated amount. Bilgore & Company accepted and endorsed the vouchers, which contained words in capital letters thereon viz: "In Payment of Proceeds of Loan DF 52-13. Accepted in Full Settlement of the Following:" Pertinent language of the Creditors Agreement is namely: "The loan . . . may not be closed until the applicant for a loan from the bank . . . has obtained and sent to the bank a statement from each of his creditors, both secured and unsecured showing the information required by this form."

The answer of Bilgore & Company admits the salient facts *supra,* but denies that the indebtedness due it by Gunn was cancelled because the loan on the part of the bank was for the accommodation of Gunn and that an oral agreement then existed between Bilgore &

Company and Gunn to the effect that Gunn would give his promissory note "for the difference," which note was to be executed by Gunn and delivered to Bilgore & Company at a subsequent date. Four days after the Federal Loan was closed the note here involved was executed and delivered.

Sections 32, 33, 34, 48 Stat. 48, 49 as amended; 12 U.S.C. 1016-1018 & Sup. provides that loans will be approved only upon condition that the total indebtedness of the applicant be reduced to such an extent, if any, in order to insure the soundness of the loan. The parties here are charged with a knowledge of these several provisions. Parties or litigants have no legal right by their actions or conduct or by secret or oral agreements to circumvent and defeat the purpose and provisions of an Act of Congress designed to rehabilitate citizens engaged in agricultural pursuits who are in financial difficulties. It is appellant's contention that the secret oral agreement between Bilgore & Company and Gunn about giving a note for the difference at a subsequent date should prevail over the plain mandates of an Act of Congress.

Was this secret agreement between the parties to keep the indebtedness alive ever brought to the attention of the Federal Land Bank? We find nothing in the record to support such a contention, but the antithesis thereof exists in that the Bank, prior to a commitment obtained the amount of Bilgore & Company's claim against Gunn with an agreement that it would as full payment accept $10,390.25. Vouchers of the bank made payable to Bilgore & Company contained language to the effect that they were issued in full payment of the debt. If Bilgore & Company had informed the bank of the "secret oral agreement to

keep the debt alive," would the bank have made the commitment? It is very unlikely. If Bilgore & Company had apprised the bank of the "secret agreement" at any time prior to the issuance of the vouchers, would the loan have been closed? We hardly think so. The bank was charged with making said loans as outlined in the Act. It relied and acted on Bilgore & Company's written consent of acceptance of the amount of $10,390.25. The Bank under the Act was charged with an obligation of rehabilitating farmers in financial distress. What assistance did Gunn receive by obtaining a loan from the bank and paying the same to Bilgore & Company? The amount of his indebtedness was not reduced if the "secret oral agreement" of the parties is upheld. The "secret oral agreement" frustrated the governmental policy outlined by the Act which enabled persons in debt, and without ability to pay, to come within the beneficient purpose of the Act and make the bank the sole creditor and thereby eliminating by the Creditor's Agreement other creditors. Such "secret oral agreements" are contrary to public policy and fraudulent. See Kniefel v. Keller, 207 Minn. 109, 290 N. W. 218; Jones v. McFarland, 178 Miss. 282, 173 So. 296; Federal Land Bank of St. Paul v. Koslofsky, 67 N. D. 322, 271, N. W. 907; Smeltzer v. McCrory, Tex. Civ. App., 101 S. W. (2nd) 850.

The several contentions of the appellants have been carefully considered and the petition for rehearing is denied.

BROWN, C. J., TERRELL and THOMAS, JJ., concur.