FOURNET, Justice.
 

 The Federal Farm Mortgage Corporation, which, pursuant to acts of Congress approved January 31, 1934, c. 7, Sec. 3, 48 Stat. 345, and June 25, 1940, c. 427, Section 4, 54 Stat. 573, 12 U.S.C.A. § 1020b, became the transferee and owner of a mortgage executed by Mrs. Tennessee Smith and her husband, P. W. Smith, in favor of the Land Bank Commissioner on property located in West Carroll Parish to secure a loan for the discharge of all of their debts under the authority of the Emergency Farm Mortgage Act of 1933, 12 U.S.C.A. § 1016, filed this suit to have declared null and void and cancelled from the mortgage records of Winn and West Carroll parishes a judgment secured in 1936 by I. H. Hatten (one of the Smiths’s creditors who had agreed to scale down the amount due him from $2,983.13 to $900 in order that this loan might be secured) on a deficiency note allegedly given Hat-ten secretly and fraudulently by the Smiths at the time this scaledown agreement was executed by Hatten for the difference between the amount originally owed Hatten and the amount paid him out of the loan thus secured, contrary to public policy and in violation of the act authorizing the loan, making parties defendant the administrator of the succession of Mrs. Smith, who has since died, P. W. Smith, Hatten, J. A. Nugent, the transferee of Hatten’s judgment, and the clerks of court of Winn and West Carroll parishes. By supplemental petition the plaintiff sought to enjoin the sale of property'owned by the Smiths seized on February 15, 1944, in execution of the said judgment, transferred to Nugent by Hatten on October 26, 1943.
 

 Hatten, filed a plea of misjoinder of parties defendant on the ground that he had sold and transferred the judgment to J. A. Nugent and had no further interest in the matter. Hatten and Nugent then filed, in
 
 *256
 
 separate instruments, exceptions of no cause and no right of action, pleas of res judicata and of prescription of 1, 3, and 5 years, and, when these were overruled with reservation of their right to replead them in their answers, they answered separately (although their answers are substantially the same) reiterating their pleas of prescription and of res judicata; denying the allegations of fraud and the illegality of the judgment, which they contend is in full force and effect; and averring that the real parties at interest are the heirs of Mrs. Smith, and P. W. Smith, the plaintiff being interposed on their behalf, and that Hatten was not bound by his agreement to accept $900 in full settlement of the $2,983.13 indebtedness since he was only paid $800 of this amount. Nugent specifically averred that the plaintiff is es-topped to contend this judgment is a nullity as to him since it knew of the judgment and permitted it to remain on record during the years between 1936 and 1944, thus inducing him to purchase the same on the faith of the public record.
 

 The defendant P. W. Smith answered admitting substantially the allegations of the plaintiff’s petition but averring further that the note on which Hatten secured this judgment was null and void, having been obtained without the free consent of himself or his deceased wife and through coercion by threats to their personal safety and fortune.
 

 There was judgment on the merits in favor of the plaintiff, as prayed for, and Nugent and Hatten have appealed.
 

 As a relief measure, passed by Congress during the great national emergency brought about by a severe economic depression, the Reconstruction Finance Corporation was authorized in 1933 by the Emergency Farm Mortgage Act, May 12, 1933, c. 25, Section 32, 48 Stat. 48, 12 U.S.C.A. § 1016, to allocate and make available to the Land Bank Commissioner the sum of $200,000,000 to be used for making loans to farmers who were in debt in order that they might liquidate their obligations and constitute the federal agency their sole creditor, thus eliminating by way of compromise all other creditors. To accomplish this purpose the federal agency required the farmer to have his creditor or creditors, both secured and unsecured, execute an agreement scaling down their claims so as to bring the aggregate within the amount the federal agency concluded the property would probably secure and that the farmer would be in a position to retire after the refinancing. Such an agreement recited in effect that the creditor agreed to accept in full payment and satisfaction of the entire debt the
 
 amount
 
 stipulated in the scaledown agreement and to surrender to the federal agency the instruments or evidences of indebtedness held against the former creditor, with the further declaration that no note or other consideration or
 
 *258
 
 evidence of indebtedness had been or would be received from the debtor incident to the acceptance by the creditor of the amount paid by the federal agency as agreed to and set out in the debt consolidation schedule.
 

 In the instant case despite the fact that on January 12, 1935, I. H. Hatten executed one of these scaledown agreements wherein he agreed to accept $900 “in full satisfaction of” the unsecured $2,983.13 indebtedness of the Smiths and on February 8 thereafter executed a receipt and agreement with respect to the payment of this $900 to him by the federal loan agency wherein he agreed “not to collect, attempt to collect, or revive in any way any further part of said indebtedness, nor to take any new security therefor,” and stipulated that he had “no understanding or arrangement with debtor that, when the loan and/or loans * * * are closed, any consideration will be given him by debtor for the amount which the debt has been scaled down, or any part thereof,” he had obtained contemporaneously with his execution of the instrument and agreement of January 12 a note from his debtors, the Smiths, for the difference between the amount paid him by the federal loan agency and the actual amount of the debt —$2,083.13—and on February 4, 1936, shortly after the maturity date of the note, instituted suit to recover the amount thereof, such suit being reduced to judgment on December 8, 1936. Although the Smiths offered as a defense in that suit the invalidity of the note because of its execution in violation of Hatten’s scaledown agreement and in contravention of law, they took no appeal from the adverse judgment secured and it was duly recorded in the mortgage records of both Winn and West Carroll parishes. On October 26, 1943, Hatten transferred this judgment to the defendant J. A. Nugent for the recited cash consideration of $1,500, and he, on February 15 following, sought to enforce the same by executing on the debtor’s property in Winn Parish and the plaintiff, upon being informed of this action, filed this suit on February 21, 1944.
 

 The courts have, without exception, held that the security or other advantage given contemporaneously, prior, or subsequent to the execution of such a scaledown agreement in addition to the amount to be received by the creditor from the federal loan agency is void, being in contravention of law and against public policy. O’Neil v. Johnson, D.C., 29 F.Supp. 307; Arndt v. Bank of America, D. C., 48 F.Supp. 961; Anderson v. Nelson, 110 Colo. 374, 134 P.2d 1053; Sears Roebuck & Co. v. McClure, 150 Fla. 667, 8 So.2d 390; Bilgore v. Gunn, 150 Fla. 799, 9 So.2d 184; Russell v. Douget, La.App., 171 So. 501; International Harvester Co. v. Young, 288 Mich. 436, 285 N.W. 12; Geel v. Valiquett, 292 Mich. 1, 289 N.W. 306;
 
 *260
 
 Kniefel v. Keller, 207 Minn. 109, 290 N.W. 218; Jones v. McFarland, 178 Miss. 282, 173 So. 296; May v. Whitbeck, 111 Mont 568, 113 P.2d 332; Federal Land Bank of St. Paul v. Koslofsky, 67 N.D. 322, 271 N.W. 907; Oregon & Western Colonization Co. v. Johnson, 164 Or. 517, 102 P.2d 928; Bell v. Jones, 100 Utah 87, 110 P.2d 327; Meek v. Wilson, 283 Mich. 679, 278 N.W. 731; Markowitz v. Berg, 125 N.J. Eq. 56, 4 A.2d 410; Ganchoff v. Bullock, 234 Wis. 613, 291 N.W. 837; Haugens v. Foster, 320 Ill.App. 212, 50 N.E.2d 524; Murphy v. Plains State Bank, 157 Kan. 530, 142 P.2d 733; Northwest Adjustment Co. v. Payne, 173 Or. 229, 144 P.2d 718; Smeltzer v. McCrory, Tex.Civ.App., 101 S.W.2d 850; and Pries v. Hurning, 218 Minn. 189, 15 N.W.2d 515. And such a note or other advantage held contrary to the terms of the creditor’s scaledown agreement is not only void as between the parties thereto but is also a nullity against the federal loan agency. Federal Land Bank of St. Paul v. Koslofsky, 67 N.D. 322, 271 N.W. 907; O’Neil v. Johnson, D. C., 29 F.Supp. 307; and Jones v. McFarland, 178 Miss. 282, 173 So. 296.
 

 The defendants concede that scale-down agreements under the emergency Farm Mortgage Act are valid and that generally notes given in violation thereof are void but then contend that the plaintiff, an interposed party for the Smiths, has no interest in bringing a suit to annul a judgment secured on such a note since it does not appear it ryill suffer any damage as the result of the enforcement of the judgment, and that if the plaintiff is not an interposed party, it has no greater right than the judgment debtor, consequently, that unless the judgment was obtained in a manner reprobated by law or public policy it can be annulled, except for those defects of form prescribed in Article 606 of the Code of Practice, only in those cases where it appears to have been obtained through fraud or other ill practices on the part of the party in whose favor it was rendered, providing such action is brought within a year after the fraud or other ill practices is discovered. Finally, the defendants contend the note on which this judgment was based was not in fact procured in violation of the scaledown agreement because no fraud was shown in its procurement, and,’ besides, that the plaintiff is estopped as to the defendant Nugent, having allowed the judgment obtained by Hatten to remain unchallenged on the records during this long period of time, thus encouraging him to purchase the judgment.
 

 We think the defendants are in error in their contention that the plaintiff has no real interest in this matter and, is, therefore, without right to bring this action for, as was pointed out O’Neil v. Johnson, D.C., 29 F.Supp. 307, 309, referred to above, the note held by a creditor contrary to the terms of his scaledown agreement is not only void as between the parties to the agreement but is also a nullity as against
 
 *262
 
 the federal agency. In that case the court said:
 

 “There are two reasons behind the law which holds notes obtained in violation of scale-down agreements invalid. In the first place, the Federal Land Bank wishes to protect its own financial position as the new creditor of a farmer who has found it impossible to continue operations under his previous load of debts. Promissory notes extracted from the debtor to make up the difference between the amount paid under a scale-down settlement and the amount originally owed, rebuild the very debt structure which was reduced by the scale-down agreement. The farmer is placed in his old position, with the only change being that of the personnel and the order of his creditors. The fact that the Federal Land Bank'holds a first mortgage on a first deed of trust is no answer to the creditor who has extracted a promissory note out of the debtor, for the favored lien position of the Land Bank does not give rise to the true security which is intended, namely, the security of a successful farm, whose earnings are ample to assure repayment of the Land Bank loan. The farmer, as already demonstrated, is unable to realize sufficient income to take care of his obligations under his former load of debts. Hence the courts declare promissory notes obtained in violation of a scale-down agreement, and which recreate the old debt structure, void.
 

 “In the second place, as a corollary of the first, the Federal Land Bank wishes to extend relief to farmers so that they are able to continue operations of their property. The purpose of the Federal Land Bank Law [12 U.S.C.A. § 1019] would be nullified if creditors were, able to obtain second lien or unsecured notes in addition to the payments which they receive under the scale-down agreements. The Land Bank was established to assist farmers; it was not created so that a federal agency might acquire farm lands by foreclosure proceedings. By means of debt reduction, the farmer was "to be placed in a position where he might make a success of his business. If the individual creditor were permitted to ignore the debt reduction and were allowed to exact notes for the balance of the old debt, the farmer- would be no better off than he had been before the Land Bank came to his assistance with a loan. Hence, in order to carry out the primary purpose of the law, the courts have declared such creditors’ notes void.” And the court concluded that “the notes were null as against the Federal Land Bank as well as against the defendants.”
 

 Thus it may be seen that the federal agency’s interest is not only that of a guardian of the interests of these farmers to whom it has been given aid in their financial difficulties, but that it has a personal pecuniary interest in the.matter until the debt is finally .liquidated.
 

 
 *264
 
 While it is true that except for those defects of form prescribed in Article 606 of the Code of Practice judgments can
 
 only
 
 be annulled in those cases where they appear to have been obtained through fraud or other ill practices on the part of the party in whose favor they have been obtained (Article 607) and that such action must be brought within a year after the fraud or other ill practices is discovered (Article 613), otherwise it can never again be called into question by the parties or '.heir privies even though liable to certain reversal on appeal (Pitts v. Neugent, 187 La. 694, 175 So. 460), these articles and this jurisprudence can have no application here for the plaintiff, while not a necessary party to the former proceeding, was a party at interest, as just demonstrated, and this plaintiff was neither a party to the proceedings in which the judgment here sought to be annulled was obtained, or a privy of the defendants in that case. Consequently, Such judgment was not only not res judicata as to the plaintiff, but the plaintiff acted within its right when it instituted this suit to have the judgment declared null and its enforcement enjoined, and this suit having been instituted within a year from the plaintiff’s discovery of the existence of such judgment, it was timely filed.
 

 The next contention of the defendant is equally without merit for where a creditor accepts an advantage in addition to the amount paid under a*scale-down agreement to which he was a party the mere acceptance of such an advantage contrary to his solemn covenant not to take such an extra'advantage in itself constitutes fraud. Bilgore v. Gunn, 150 Fla. 799, 9 So.2d 184; Geel v. Valiquett, 292 Mich. 1, 289 N.W. 306; Smeltzer v. McCrory, Tex.Civ.App., 101 S.W.2d 850; Kniefel v. Keller, 207 Minn. 109, 290 N.W. 218; Federal Land Bank o,f St. Paul v. Koslofsky, 67 N.D. 322, 271 N.W. 907; May v. Whitbeck, 111 Mont. 568, 113 P.2d 332; and 12 U.S.C.A. § 1019, 48 Stat. 49. See, also, John T. Hardie’s Sons & Co. v. Scheen, 110 La. 612, 34 So. 707, and Consolidated Companies, Inc., v. Angelloz, La.App., 166 So. 910; Id., La.App., 170 So. 556.
 

 After consideration of the evidence in the record we, like the trial judge, are not impressed with the good faith of the transaction whereby this judgment was transferred from Hatten to Nugent. Furthermore, the plaintiff in the instant case has done nothing to deceive or mislead the defendant Nugent or to cause him to act to his determent and mere silence alone does not of itself raise an estoppel, particularly when the plaintiff had no knowledge of the existence of this judgment. Tyson v. Spearman, 190 La. 871, 183 So. 201; Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604; and Harvey v. Richard, 200 La. 97, 7 So.2d 674. Besides, a plea of estoppel can have no application in this case for, as is so aptly pointed out in American Jurisprudence, “The doctrine of estop
 
 *266
 
 pel by conduct or by laches has no application to an agreement or instrument which is illegal because it violates an express mandate of the law or the dictates of public policy. Neither action nor inaction of a party to such an agreement can validate it ; and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity.” Vol. 2, p. 741, § 222, See, also, the authorities cited in Note 2 under this section.
 

 For the reasons assigned the judgment appealed from is affirmed.
 

 ROGERS, J., not having heard the argument, takes no part.