HAMLIN, Justice ad hoc.
Defendant appeals from a 'judgment awarding' plaintiff the sum of $2,271.50 claimed under an alleged -oral contract, which is an amount in addition to the sum of $8,370 paid to plaintiff under a'.Veterans Administration loan for building defendant’s residence. - •
The trial judge correctly states the facts adduced from the evidence as follows:
“ * * * When plaintiff was approached by the .defendant with a request that he was desirous of having him submit a bid for the construction of his home according to his plans and specifications, he did so, and thereafter informed defendant he could or would construct it for the sum of $10,-475.00. According to plaintiff’s testimony, at the time he commenced the construction of it, he knew not whether the defendant had the money or from whom he was to obtain it nor did he know how it was to be financed but depended on defendant’s financial responsibility for payment. It was only after the work had begun that he was informed by defendant that he was going to apply for a loan with the Veterans Administration, but that he was going to have the home built independently of whether or not the loan would be made through the Veterans Administration. According to plaintiff’s testimony, he immediately began construction of it and after having completed the foundation entailing an expenditure of approximately $1,800.00 for labor and material necessary therefor, the defendant informed him that the Veterans Administration would not consent to make him a loan in excess of $8,370.00, *45 contrary to what he applied for, to-wit: the sum of $10,475.00, and for which he had contracted with defendant. * * * defendant admitted the dwelling home was built in the same manner as originally called for in the plans and specifications, for which he had agreed to pay this latter sum.
* * * * * *
“On the trial of this case the defendant admitted that he had entered into an oral agreement with plaintiff to pay him the difference between the sum of $10,475.00 and the amount which he received from the Veterans Administration, to-wit: the sum of $8,370.00, and additions in the sum of $166.50 requested by defendant.
“* * * Mr. Charles A. Riddle, Jr., an attorney of the local bar, * * * testified he was the attorney who represented the Veterans Administration during the closing of this loan and' * * looked after all the legal matters, such as the recordation of the mortgage affecting the security given on November 19th, and a mortgage * * * executed in favor of Mr. Carl A. Gray, Jr., as Administrator of Veterans Affairs, dated June 30, 1951, and that following this, the entire transaction was consummated in his office and at the time the Veterans Administration’s cheek was .given to the plaintiff, in payment of the services rendered by him, the defendant was present and he openly admitted owing the plaintiff the difference, which in accordance with Mr. Riddle’s testimony was around the sum of $2,000.00, more or less, but he does not remember the exact figure. According to Mr. Riddle’s testimony, both the plaintiff and defendant were in perfect accord. The defendant also admitted having consulted an attorney-at-law from the Alexandria -bar, in the person of one Vincent Hazelton, and that after discussing the matter with him, he authorized his attorney (Mr. Hazelton) to attempt to effect a settlement with plaintiff by paying the amount of $2,275.00 on condition the defendant would deduct the sum of $166.50, which said amount he claimed to be required to make certain repairs and corrections on the home. Defend- - ant also admits that he promised to pay the amount to plaintiff’s attorney, which promise was made quite some time after the loan transaction had been completed. Thus, the Court finds that the defendant in this cause, prior to the time of any negotiations between defendant and the Veterans Administration, promised to pay plaintiff $10,475.00 for the construction of a dwelling; that after said dwelling was constructed and a Veterans Administration direct loan was consummated between defendant and the Veterans' Administration, de-. *47 fendant promised to pay the amount claimed by plaintiff in this suit to plaintiff in the office of the loan closing attorney, Mr. C. A. Riddle, Jr.; that after the dwelling had been completed and the above loan had been consummated, defendant, through his then attorney Mr. Vincent Hazelton, promised to pay said amount claimed in this suit to plaintiff’s attorney and defendant himself admits that he promised to pay said amount to plaintiff’s attorney, which latter promise was also made subsequent to the closing of the Veterans Administration loan. * * * ”
To plaintiff’s petition, defendant filed exceptions of no cause and no right of action, which were overruled.
The Veterans Administration filed an intervention to have plaintiff’s suit dismissed on the grounds that the oral contract sued upon was null and void, being in contravention of federal laws and regulations. Section 512 of the Servicemen’s Readjustment Act of 1944, as amended, Public Law 346, 78th Congress, 38 U.S.C.A. § 6947 Plaintiff’s exception of no cause and no right of action was sustained, from which action no appeal has been taken.
After the case was tried on its merits, the trial judge concluded that plaintiff had proved a valid claim, such not being prohibited nor stricken with nullity by the Servicemen’s Readjustment Act, Public Law 475, 81st Congress, 38 U.S.C.A. § 693 et seq., and Article 1892 of the LSA-Civil Code.
The same issues are raised on this appeal as were urged in the trial court. Defendant contends that the subsequent contract contravenes positive law, and plaintiff argues that the contract is supported by a moral obligation. Plaintiff also contends that the loan secured by the defendant was a direct loan, and that it is not subject to the strict provisions of the guaranteed loan.
In 38 U.S.C.A. § 694a (a) (3), it is provided :
“That the price paid or to be paid by the veteran for such property or for the cost of construction, repairs, or alterations does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator.”
The above section is found under the title, “Loans for homes; amount of guarantee.” The mandate is that there must be a compliance with Section 694a(a) (3) for the serviceman to secure a'guarantee of his loan.
In 38 U.S.C.A. § 6941(d), we find:
“The Administrator is authorized to sell, and shall offer for sale, to any private lending institution evidencing ability to service loans, any loan made under this section at a price not less than par; that is, the unpaid balance *49 plus accrued interest, and may guarantee any loan thus sold subject to the same conditions, terms, and limitations which would be applicable were the loan guaranteed under 694a (b) of this title.” [1]
We cannot find any distinction between the provisions with respect to appraisement for guaranteed loans and those for direct loans. As we see it, the difference between a direct loan and a guaranteed loan is that in one instance the government is the direct lender and in the other it guarantees the loan. The risk is the same. The difference is that the government parts with the use of its money in a direct loan, and a public lending agency actually loans the money in a guaranteed loan. If the veteran defaults on a direct loan, the government loses its money; if he defaults on a guaranteed loan, then the government pays. It follows that in either case the Federal Government protects itself to the extent of demanding that the loan not exceed the appraised value of the property.
The case of Karrell v. United States, 9 Cir., 181 F.2d 981, 983, presents a factual situation similar to that herein contained. Under a guaranteed plan, the veteran promised to pay two amounts — the appraised value and an additional amount. Karrell, a promoter, was criminally charged and found guilty under Sections 697 and 715 of Title 38 U.S.C.A. The United States Court of Appeals, Ninth Circuit, stated:
“It will be seen that there is no prohibition in § 694a against the purchase of a housing unit for more than is borrowed provided the appraisal is equal to the money borrowed plus the amount paid in addition thereto.
‡ ijc s{: sfs He sjs
“It may be argued that since congress did not make it illegal for a veteran upon his own volition to pay more for a house unit than its appraisal value, it follows that the sum paid above the appraisal cannot he considered as a loss by the veteran. But the deal from start to finish is one under governmental paternal help to a person who has been taken from the normal pursuits to service for his country in a time of stress. He was entitled to the full protection of the statute and it is no far cry to hold that the sum paid to appellant outside of escrow does represent, at least in round *51 numbers, the amount of money the veteran paid over and above the amount he would have paid had the purchase not been tinted by the methods used to conceal the actual facts.”
The above principle was upheld by the Supreme Court of California in Young v. Hampton, 36 Cal.2d 799, 228 P.2d 1, 4, 19 A.L.R.2d 830, by the following statement:
“ * * * By section 694a of that statute, the government endeavors to assure terms of payment which bear a proper relation to the veteran’s present and anticipated income and expenses. The requirement of the same section that the price to be paid by the veteran for the cost of construction shall not exceed the reasonable value as established by a designated appraiser was obviously enacted to protect the borrower from acquiring property at an exhorbitant price. That this was the legislative intent is manifest from the discussions at the time enactment of the statute was being considered. (Congressional Record, Vol. 90, Pt. 4, p. 4649 (May 12, 1944, to June 12, 1944).
“ * * * a contract which is contrary to the policy of the Servicemen’s Readjustment Act is also unenforceable. To hold otherwise would invite builders to exact similar secret contracts with the assurance that they would be upheld.”
See, also, Diamond v. Willett, La.App., 37 So.2d 338.
In view of the above jurisprudence, we find that the contract entered into between plaintiff and defendant, for an additional amount to be paid to plaintiff on the building contract herein involved, was in violation of the Servicemen’s Readjustment Act, supra, and cannot be enforced.
“The courts have, without exception, held that the security or other advantage given contemporaneously, prior, or subsequent to the execution of such a scaledown agreement in addition to the amount to be received by the creditor from the federal loan agency is void, being in contravention of law and against public policy. * * *” Federal Farm Mortgage Corporation v. Hatten, 210 La. 249, 26 So.2d 735, 738.
In view of our determination under Servicemen’s Benefits, there is no need to discuss the other issues raised in this case.
For the reasons assigned, the judgment of the trial court is reversed and set aside, and it is now ordered that plaintiff’s suit be dismissed at his cost.
FOURNET, C. J., and SIMON, J., absent.

. 38 U.S.C.A. § 694a(b) provides:
“Any loan made under this subcbapter to a veteran who has not, after April 20, 1950, availed himself of the benefits of this subchapter for the purpose of purchasing residential property or constructing a dwelling to be occupied as his home, the proceeds of which loan are to be used for that purpose, may, notwithstanding the provisions of subsection (a) of section 694 of this title relating to the percentage or aggregate amount of loan to be guaranteed, be guaranteed, if otherwise made pursuant to the provisions of this sub-chapter, in an amount not exceeding sixty per centum of the loan: * * * ”