"Where a debtor and his secured creditor sign a statement to a Federal land bank that upon receipt by the creditor of the stated full amount the debt and lien would be satisfied in full, and where the land bank then tenders to the creditor and debtor a draft in an amount less than that mentioned by the debtor and creditor, but which draft recites on its face that `this amount is accepted in full settlement of the indebtedness represented by a certain security deed against [a described] lot of land,' this being the lien theretofore referred to, and where the creditor accepts, indorses, and cashes the draft thus tendered, he is bound by the condition embraced in the terms of the draft; with the result that a subsequent new lien taken by the creditor from the debtor for the difference between the amount of the draft and the amount of the original debt would be unenforceable as contrary to public policy. This is true even though the creditor had previously notified the Federal Land Bank that the lien debt would not be canceled for less than its full amount."
 DECIDED OCTOBER 1, 1942.
Mrs. Julia A. Reynolds brought an action of bail trover against C. E. Robinson. The case proceeded to a verdict and judgment in favor of the plaintiff for $460.27, with interest and costs. The *Page 67 
defendant's motion for new trial was overruled and that judgment is assigned as error. The suit sought to recover certain described live stock and a Weber wagon to which the plaintiff claimed title. As shown by the evidence, the suit grew out of an action between the parties in which Robinson bought from Mrs. Reynolds a certain lot of land for $2500. In payment of that amount, he executed seventeen notes payable to Mrs. Reynolds for different amounts and due at different dates. To secure the payment of the notes he gave Mrs. Reynolds a security deed to the land. This transaction occurred in 1934. Robinson was unable to pay some of the notes, and in 1938 he obtained from the Federal Land Bank of Columbia, South Carolina, and the Land Bank Commissioner, for the purpose of paying his indebtedness to Mrs. Reynolds, certain loans. Robinson owed Mrs. Reynolds the sum of $2313.09. Both Robinson and Mrs. Reynolds signed an application for a loan from said bank and said commissioner. The bank and the commissioner each agreed to make a loan, the two loans aggregating $2200, which was insufficient to pay the debt and the expenses of the loan. To induce Mrs. Reynolds to agree to the loans, Robinson agreed to execute a new note for her in the sum of $460.27 — the balance of his debt to her after the payment to her of the net proceeds of the two loans, the new note to be secured by a bill of sale to certain personal property of Robinson and by a second security deed to the land which he had bought from Mrs. Reynolds in 1934. Mrs. Reynolds' consent to the loan was further induced by the statement to her of the lawyer, who prepared the application for the loans, that in his opinion, if she informed the bank and the commissioner that she was not accepting the net amount of the loans in full settlement of the debt, she would not be prevented from thereafter collecting the balance thereof. Subsequently Robinson and Mrs. Reynolds signed "a creditor's agreement" and sent it to the bank and the commissioner, together with the following letter from the lawyer: "We also call your attention to the fact that the lien holder [Mrs. Reynolds] will not accept the amount of the commitment, but the applicant [Robinson] expects to raise the difference from another source." Upon receipt of the agreement and letter, the bank and the commissioner made loans aggregating $2200. After deducting the expenses of the loans the net proceeds amounted *Page 68 
to $1914.50. The bank and the commissioner each sent a draft (the two drafts aggregating that amount) payable to Robinson and Mrs. Reynolds, and Robinson indorsed them over to Mrs. Reynolds. Each draft recited on its face that "this amount is accepted in full settlement of the indebtedness" of Robinson to Mrs. Reynolds. Robinson executed his new note, bill of sale, and the security deed after he had indorsed the drafts but on the same day thereof, and these papers were delivered to Mrs. Reynolds at the same time that she received and accepted the drafts.
The only indebtedness listed in the creditor's agreement was the sum of $2313.09 owed by Robinson to Mrs. Reynolds as the unpaid balance on the purchase-price of the land in question. In that agreement it is recited as follows: "The undersigned has agreed and does hereby agree to accept in full and complete settlement of all indebtedness and obligations of and claims and liens against applicant and property offered by applicant as security for a loan, in favor of, owned or held by the undersigned, of any kind or nature, whether secured or unsecured, liquidated or unliquidated, whether or not scheduled above, and whether or not the same be now due and payable, the sum of $2313.09. Upon receipt of said amount applicant will not be indebted to or owe to the undersigned any sum or thing whatsoever, and the undersigned will mark paid, cancel and satisfy all instruments, papers and records representing, evidencing and securing any and all indebtedness and obligations of and claims and liens against applicant and property offered by applicant as security for a loan in favor of or owned or held by the undersigned. . . Any claim, lien indebtedness or obligation omitted from the foregoing schedule or inaccurately described therein, is covered by and included in the terms of this agreement. There is no understanding or agreement that the undersigned, or any one whomsoever, is to be paid an additional amount upon the indebtedness, claims, liens and obligations herein agreed to be settled, directly or indirectly, in cash or otherwise, or that the undersigned, or any one whomsoever, will be given any security or evidence of indebtedness or obligation therefor; and the undersigned will not attempt to collect, demand or accept payment of the difference, or any part thereof, between the total amount of the indebtedness herein stated and agreed to be accepted in full settlement *Page 69 
thereof, and will not demand, accept, or receive any obligation, evidence of indebtedness, lien or security for said difference, or any part thereof. This statement and agreement is made to assist the above-named applicant to obtain a loan [and] to induce The Federal Land Bank of Columbia, the Land Bank Commissioner, and the Federal Farm Mortgage Corporation, or any one or more of them, to make a loan to said applicant and to release, distribute, and pay out the proceeds from such loans, with the full understanding that any loan that may be made to said applicant will be upon the consideration and condition that this statement and agreement be furnished, be true and correct, and be fully and faithfully performed, and not otherwise."
(After stating the foregoing facts.) This court certified to the Supreme Court the question whether, under the above-stated facts, the contract between Mrs. Reynolds and Robinson, evidenced by the new note, the bill of sale, and the second security deed, was void as being against public policy, and the Supreme Court answered that it was against public policy and was void. For the full decision of that court see Robinson
v. Reynolds, 194 Ga. 324 (21 S.E.2d 214). Our headnote is quoted from that decision. It follows that a verdict in favor of the defendant was demanded by the evidence, and that the verdict for the plaintiff was contrary to law and the evidence. The refusal to grant a new trial was error. Since this ruling is controlling in the case, the special assignments of error are not considered.
Judgment reversed. MacIntyre and Gardner, JJ., concur.