## HUMPHRYS v. FISHER et al.
### No. 12681.

United States Court of Appeals
Fifth Circuit.

Dec. 30, 1949.

Hugh L. Umphres, Jr., Amarillo, Tex., Albert Smith, Amarillo, Tex., for appellant.

B. L. Morgan, Amarillo, Tex., James W. Witherspoon, Hereford, Tex., H. H. Cooper, Amarillo, Tex., J. V. Wheat, Houston, Tex., for appellees.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellee, Fisher, bought real estate from appellee, Evans, paying a cash consideration of $3500.00, executing a note in the sum of $4920.00 dated September 25, 1929, with vendor's lien retained, assuming an indebtedness in the principal sum of $3500.00 due Great Southern Life Insurance Company of Houston, Texas, and also assuming an indebtedness in the principal sum of $2100.00 to the First National Company of Temple, Texas. The indebtedness of Evans, so assumed by Fisher, to the Great Southern and to First National Company was each secured by a deed of trust or vendor's lien on the property.

Evans on February 18, 1930, assigned, transferred, and endorsed over to C. M. Humphrys, now deceased, the Fisher note for $4920.00, together with the lien securing same, by a writing duly recorded in the public records of Deaf Smith County. The great drouth and dust storm hit that section during the years of 1932, 1933, and 1934. Fisher became unable to pay the debts that he had assumed or the interest. Resort was had to the Federal Land Bank for the purpose of undertaking to refinance and scale down Fisher's indebtedness. The indebtedness to the Great Southern Life Insurance Company and to the First National Company was prior to, and superior to, the lien securing the indebtedness evidenced by the note held by Humphrys, and in order to refinance these loans the Federal Land Bank agreed to make a loan to Fisher on the lands in question in the amount of $5000.00, secured by a deed of trust on the land, and the Federal Land Bank Commissioner agreed to make an additional loan of $2500.00, provided the note to Humphrys for $4920.00 be scaled down to $750.00 and assigned to him, and provided

the balance of the $4920.00 note, as well as the vendor's lien securing same, be released. This was agreed to by Humphrys, and thus it was arranged that Fisher's indebtedness to the Life Insurance Company, to the First National Company, and to Humphrys was refinanced, scaled down, and paid off. In this manner the Federal Land Bank and the agency represented by the Federal Land Bank Commissioner became the holders of the entire indebtedness theretofore held by the Insurance Company, the First National Company, and Humphrys. In the transaction between Humphrys and the Federal Land Bank Commissioner, Humphrys executed and delivered to the Land Bank a transfer and assignment of $750.00 of the vendor's lien note by an instrument of writing containing the following recitation: "Any and all portions of the above described note which is not hereby assigned have been fully paid and the lien securing the payment thereof is hereby released." This assignment was also recorded in the deed records of the county.

Notwithstanding Humphrys' agreement to scale down the indebtedness to the sum of $750.00, which he transferred to the Land Bank, there was caused to be executed to him a new note by Fisher and his wife for the balance of the $4920.00, plus interest, totalling $5560.00. Evans did not endorse this note but subsequently the indebtedness was renewed by the execution of seven notes and those latter notes were endorsed by Evans. Thereafter Humphrys died and the appellant here is the executrix under his will.

Fisher brought this suit, against Humphrys' executrix, seeking a declaratory judgment, asserting that the series of notes were merely renewals of the obligations that existed under the original note of $4920.00, and that although Humphrys had agreed with the Federal Land Bank that all the indebtedness thereunder had been paid and released except the $750.00, he, the said Humphrys, nevertheless required the plaintiff to execute and deliver to him a note of $5560.00 dated April 13, 1934, as well as the seven renewal notes above referred to, which latter notes he also required Evans to endorse; that by reason of

the said representations of Humphrys, the Federal Land Bank was induced to refinance plaintiff's indebtedness, and Humphrys was thereby enabled to receive the sum of $750.00 from the Land Bank. Plaintiff asserts that all of these renewal notes were contrary to the laws of the United States in that the notes of Humphrys were required to be released before the Commissioner of the Federal Land Bank agreed to make the loan and before he, Humphrys, became entitled to receive $750.00 from the Land Bank, and that any notes and evidences of indebtedness executed thereafter by either the plaintiff as maker and by Evans as endorser were void and of no force.

The Court below, without making any specific findings of fact, agreed and ordered the notes canceled. The only finding of fact by the Court was: " * * * I am persuaded that Mr. Humphrys released, and an apparent desire to represent the lending agency, the Federal Emergency Fund, or, that which was made through the Federal Land Bank, was released, both as to liens, and, as to debts, must be accepted as the proper equity ground here. And, she must go cast by a decree, in each of these cases, against her, both as to the prayer of the Plaintiffs for cancellation, but also against her cross actions."

There is no finding by the lower Court that Humphrys had a secret agreement or understanding with Fisher or Evans, that if he transferred the indebtedness to the Land Bank for the sum of $750.00 in order that Fisher might have his indebtedness refinanced, nevertheless Fisher and Evans would be required to pay the balance of the indebtedness and to execute notes therefor. Neither did the Judge below specifically state as a conclusion of law that such an agreement between Humphrys, Fisher, and Evans made the notes issued pursuant thereto void as being against public policy. Nevertheless, his granting of the relief prayed for and holding that the equities are against the executrix of Humphrys of necessity must be based upon an implied finding of such a fact and such a conclusion. At any rate, appellant makes the following admission in her brief: " * * * In

short, the series of six notes upon which Appellant sues evidence an extension, renewal, and continuation of the true unpaid balance of the original debt upon which Evans originally became liable by virtue of his indorsement of the $4,920.00 note, after applying the said $750.00 thereto. (R. 47, 48, 113.) These facts are shown by the pleadings and the uncontroverted testimony in the record."

The evidence clearly bears out that admission and renders these notes violative of the agreement with the Land Bank, leaving as the only question in this case whether or not, in the light of Sec. 1016(d) of Title 12 U.S.C.A., the recitals in the assignment by Humphrys to the Land Bank in order to secure a scale-down of Fisher's indebtedness and a refinancing of same by the Land Bank render these notes void as against public policy.

This loan was made pursuant to Section 1016 of Title 12, U.S.C.A., providing for loans to farmers by Federal Land Bank Commissioner. Subsection (d) of Section 1016 provides that: "No loan shall be made under this section unless the holder of any prior mortgage or instrument of indebtedness secured by such farm property arranges to the satisfaction of the Land Bank Commissioner to limit his right to proceed against the farmer and such farm property for default in payment of principal."

Assuredly it was not the intent of Congress and was not the purpose of the Land Bank in attempting to aid farmers in their financial difficulties to refinance and scale down their indebtedness merely to change the holder of those debts. We are in no doubt whatsoever that where a creditor requires his debtor to stand to his original indebtedness, meanwhile representing to the Land Bank Commissioner that the indebtedness has been scaled down and reduced in a substantial amount, and by reason of such representations the original indebtedness is refinanced, such representations would be fraudulent and the notes obtained from the debtor in disregard of these representations would be void both because of the fraudulent representations and as against public policy.

That such an agreement is void as against public policy is well established. See the following cases: Arndt v. Bank of America, D.C., 48 F.Supp. 961; Bilgore v. Gunn, 150 Fla. 799, 9 So.2d 184; Robinson v. Reynolds, 68 Ga. App. 66, 22 S.E.2d 179; Ellwood v. Lancaster, Tex.Civ.App., 157 S.W.2d 973; Jones v. McFarland, 178 Miss. 282, 173 So. 296; O'Neil v. Goodspeed, D.C., 29 F.Supp. 307; Northwest Adjustment Co. v. Payne, 173 Or. 229, 144 P.2d 718; Boone v. Pierce, Tex.Civ.App., 218 S.W.2d 347; May v. Whitbeck, 111 Mont. 568, 113 P.2d 332; Anderson v. Nelson, 110 Colo. 374, 134 P.2d 1053.

The contention of the appellant that the appellees did not meet the burden on them to prove that the notes in question have been paid, even if appropriate here, has been answered by the warranties of Humphrys in the transfer to the Land Bank, by the admission of counsel, and by the evidence that the notes in suit were but a continuation of the original $4920.00 note.

There is no merit in the appellant's contention that even though Fisher and wife were released by the agreement with the Land Bank, this would not release Evans, the endorser, who had received no benefits from the Act and who was not a farmer whose debts were being scaled down. The notes, being against public policy, were not merely voidable but were void, and Evans' subsequent endorsement of these void obligations created no liability against him in the absence of any proof of the receipt by him of a new consideration for so doing. We are not prepared to hold that the endorsement of a note that is void as against public policy nevertheless imputes liability to such an endorser.

The judgment of the Court below is accordingly

Affirmed.